In re Thomas Buntin THREEWITT, Nancy Lee Threewitt, Debtors.

Cortland Q. CLOTFELTER, Trustee, Plaintiff,

v.

CIBA–GEIGY CORPORATION, Irving Trust Company, Thomas Buntin Threewitt, Nancy Lee Threewitt, Defendants.

Bankruptcy No. 81–10378.
Adv. No. 81–0557.

United States Bankruptcy Court, D. Kansas.

May 25, 1982.

Ronald K. Badger of Badger & Clotfelter, Wichita, Kan., for the trustee, Cortland Q. Clotfelter.

Richard T. Foster of McDonald, Tinker, Skaer, Quinn & Herrington, Wichita, Kan., and Stephen M. Piga of White & Case, New York City, for CIBA–GEIGY Corp. and Irving Trust Co.

Robert L. Feldt, Great Bend, Kan., for debtor.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

In this voluntary chapter 7 proceeding, the trustee has filed a complaint seeking a court order requiring the defendants to turn over the debtors' interest in an Employee Retirement Investment Savings Account (ERISA) fund under 11 U.S.C. §§ 541, 542. The defendants, CIBA–GEIGY Corporation, the employer of the debtor and Irving Trust Company, trustee of the ERISA fund, oppose turnover because they assert the funds are not property of the estate and because turnover would subject the Plan to loss of tax qualification status under 26 U.S.C. § 401(a).

The issues for determination are:

1. What is the effect of a "termination upon bankruptcy" clause in the Investment Savings Plan for Salaried Employees of CIBA–GEIGY Corporation.

2. Does the debtors' interest in an ERISA fund become property of the estate pursuant to § 541 of title 11 upon commencement of a case and creation of an estate pursuant to § 301 of title 11.

The parties have briefed the issues and the matter is ready for resolution.

### FINDINGS OF FACT

The debtors filed their voluntary chapter 7 petition on March 11, 1981. The debtor, Thomas Buntin Threewitt, has been a participant since April, 1974 in the Investment Savings Plan (Plan) for Salaried Employees of CIBA–GEIGY Corporation and certain affiliated corporations. The Plan satisfies the requirements of the Employee Retirement Income Security Act of 1974 (ERISA), and is a qualified plan for tax purposes under section 401(a) of the Internal Revenue Code.

Under the Plan, employees of CIBA–GEIGY may make Basic Contributions of up to 5% of their compensation. These after tax contributions are matched by CIBA–GEIGY in a percentage ratio related to the employee's length of service. The Plan permits employees to make additional, unmatched contributions, but the debtor has not done so.

As of December 31, 1980 the debtor's nonforfeitable vested account balance in the Plan was $22,249.48; $13,686.73 represented Basic Contributions and their earnings and $8,562.75 represented company contributions and their earnings. This is the last available accounting prior to the date the debtor filed his petition in bankruptcy.

The Plan provides that funds in an employee's account cannot be subject to any legal or equitable process to satisfy the employee's debts. The Fund also may not be alienated, transferred, assigned, sold, anticipated, pledged or encumbered (Plan ¶ 12.3).

The Plan permits partial withdrawal of funds subject to amount restrictions (¶ 8.4). An employee also can withdraw unlimited amounts of money credited to the account in the previous two years (not including nonvested portions nor 50% of the actual dollar amount of the total matching contributions) to meet certain financial needs, including:

layoff

illness

disability

purchase of house or residence

dependent's tuition charge

funeral costs

other financial hardships

(Plan ¶ 8.4).

Certain withdrawals suspend the employee's right to contribute to the Plan for a period ranging from four months to 12 months (Plan ¶ 8.4).

The employee is also permitted to borrow from the Fund (Plan ¶ 8.6). Any sum borrowed is secured by a lien on the debtor's portion of the Fund.

The debtor has never made a withdrawal from his account, but as of the day he filed his bankruptcy petition, he had an outstanding loan of $9,530.33. The loan proceeds apparently were used in a restaurant business venture and for other obligations of the debtor.

The Plan further provides that if an employee,

> shall become bankrupt ... then his rights to such payment shall, in the absolute discretion of the Committee, cease and terminate ....

(Plan ¶ 12.4).

The debtor did not attempt to exempt any portion of his vested interest in the pension fund in his petition schedules.

## CONCLUSIONS OF LAW

### I. Termination upon Bankruptcy Clause.

Title 11 U.S.C. § 541(c)(1)(B) provides: *... an interest of the debtor in property becomes property of the estate ... notwithstanding any provision—*

> \* \* \* \* \* \*
>
> *(B) that is conditioned on the insolvency ... of the debtor, [or] on the commencement of a case under this title, ... and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.*

It is facially clear that if the debtor's non-forfeitable interest in the Plan is otherwise property of the estate, the "termination upon bankruptcy" clause (Plan ¶ 12 4) is of no effect. Congressional intent as expressed at H.R.Rep.95–595, 95th Cong., 1st Sess. 369 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787 merely reiterates what is clear in the reading of the statute.

### II. Property of the Estate.

#### A. ERISA Provisions.

The Internal Revenue Code § 401(a) et seq. establishes the criteria by which a pension plan is "qualified" to defer the employee's income taxation until retirement and to assure the employer a deduction at the time it contributes to the Plan. See *Trebotich v. C. I. R.*, 492 F.2d 1018 (9th Cir. 1974).

One requirement for qualification is the Plan must provide that trust benefits cannot be assigned or transferred. 26 U.S.C. § 401(a)(13). The tax regulations interpret § 401(a)(13) to mean that the benefits of a qualified trust cannot be subject to attachment, garnishment, levy, execution or other legal or equitable process, except to enforce a federal tax levy or to aid in collection of unpaid taxes. Id. Treas.Reg. § 1.401(a)–13(b)(1) (1982). Most courts construe 26 U.S.C. § 401(a)(13) to prevent state attachment and levy, though there is not uniformity. See Comment, Attachment of Pension Benefits under ERISA, 74 Nw.U.L.Rev. 255 (1979). In preventing attachment the Courts cite 29 U.S.C. § 1144(a) which provides that federal ERISA law preempts state law when ERISA plans are in issue. Attachment to satisfy support and alimony payments, however, has been allowed. *Operating Eng'rs Local # 428 Pension Fund v. Zamborsky*, 650 F.2d 196, 198, n. 2 (9th Cir. 1981); *American Telephone & Telegraph Co. v. Merry*, 592 F.2d 118, 121 (2nd Cir. 1979); Note, Pension Fund Benefits Governed by the Federal Employee Retirement Income Security Act are Subject to Court Ordered Alimony and Child Support Payments, 7 Fordham Urban L.J. 693 (1979); Comment, ERISA: Does It Prohibit a State Court From Attaching Plan Benefits, 40 U.Pitt.L.Rev. 47 (1978).

In response to the alimony and support decisions, the Treasury issued a ruling that an ERISA Plan,

> *will not lose its qualification under section 401(a) of the* [Internal Revenue] *Code because the trustee complies with a court order requiring deductions from the benefits of a participant in pay status for alimony or support payments. However, accrued benefits that are not currently payable to the participant under the terms of the plan may not be attached since the participant has no present right to such benefits.*

Rev.Ruling 80–27, 1980 C.B. 85–86.

#### B. Relation of ERISA to the Bankruptcy Code.

The defendants argue that the transfer and execution restrictions of 26 U.S.C. § 401(a)(13), the accompanying regulations, and rulings prevent the debtor's interest in the pension funds from becoming part of the bankruptcy estate, but they have overlooked an important ERISA provision. Al-

though 29 U.S.C. § 1144(a) preempts state laws and state judgment enforcement devices, nevertheless 29 U.S.C. § 1144(d) states:

> Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States . . . .

Therefore, neither 26 U.S.C. § 401(a)(13) nor 29 U.S.C. § 1144(a), (d) preempts nor impairs the operation of other federal statutes. See In Re Baviello, 12 B.R. 412, 418 (Bkrtcy.E.D.N.Y.1981). Accord, National Stabilization Agreement of the Sheet Metal Trust Fund v. Commercial Roofing & Sheet Metal, 655 F.2d 1218, 1223 (D.C.Cir.1981); Bonin v. American Airlines, Inc., 621 F.2d 635, 638 (5th Cir. 1980); Eversole v. Metropolitan Life Ins. Co., 500 F.Supp. 1162, 1167 (C.D.Cal.1980).

The Bankruptcy Code and ERISA are creatures of Congress. Both allow certain otherwise unattainable privileges to individuals and both subject those who utilize the privileges granted to certain imposed restrictions. It is neither illogical nor inequitable that Congress may require an otherwise nonassignable or nontransferrable Congressionally created right to become an asset of a debtor's estate in order for the holder of that right to take advantage of another Congressionally created right—bankruptcy.

■ Therefore, the Court holds that when ERISA provisions and the Bankruptcy Code are in conflict, the Bankruptcy Code governs.

## C. Effect of Bankruptcy Code on ERISA Plans.

■ Section 541(a)(1) states the bankruptcy estate consists of all legal or equitable interests of the debtor . . . as of the commencement of the case. The purpose of § 541 is to bring anything of value that the debtors have into the estate. H.R.Rep.95–595, 95th Cong., 1st Sess. 176 (1977). The Code broadens what is included in the bankruptcy estate by eliminating Act concepts of leviability, transferability, vested title and fresh start policies. See Rendleman,

Liquidation Bankruptcy Under the '78 Code, 21 William & Mary L.Rev. 575, 594–95 (1980) [hereinafter, Rendleman, Liquidation Bankruptcy]. Though state law will define the debtor's legal and equitable interests, the issue of what is property of the estate is a federal issue. Id., 4 Collier on Bankruptcy ¶ 541.02[1], at 541–12 (1981).

■ Section 541(c)(1)(A) provides that restrictions or conditions on transfers of a debtor's property are invalidated. Thus the restrictions of 26 U.S.C. § 401(a)(13) which are in conflict with § 541(c)(1)(A), are superseded by the Bankruptcy Code pursuant to 29 U.S.C. § 1144(d) and the intent of Congress, and do not prevent the pension funds from passing to the bankruptcy estate. (See Part II, B of this opinion, supra).

Another change made by the Bankruptcy Code is that the estate consists of all property, even if exempt. After the property comes into the estate, then the debtor is permitted to exempt it under . . . 11 U.S.C. 522 . . . . H.R.Rep.No.95–595, 95th Cong., 1st Sess. 368 (1977). Section 522(d)(10)(E)(iii) grants the debtor an exemption in ERISA funds reasonably necessary for the support of the debtor and any dependent of the debtor . . . , if the ERISA funds are qualified under the Internal Revenue Code (26 U.S.C. §§ 401(a), 403(a), 403(b), 408 or 409). By providing a federal exemption for ERISA funds, Congress evidenced a clear intent that the funds were property of the estate under § 541. If the ERISA funds were not property of the estate, there would have been no reason for Congress to provide a federal exemption. Indeed,

> [e]very lawyer who counseled debtors under the old law knows the question of whether bankrupts kept their pension rights was a mess under the transferability-leviability standard. Under the Code, pensions are estate property, but may be carried out as exempt.

Rendleman, Liquidation Bankruptcy, 21 William & Mary L.Rev., supra at 597. Kansas has "opted out" of the federal exemptions, see 11 U.S.C. § 522(b); K.S.A. § 60–

2312 (Supp.1980), but the issue of whether ERISA funds are exemptible under Kansas law is not before the Court. Kansas exemptions aside, it is clear in resolving this federal issue that Congress intended ERISA funds in which the debtor has a legal or equitable interest to be property of the estate.

The defendants strenuously argue that § 541(c)(2) excepts ERISA funds from inclusion in the estate. Section 541(c)(2) states that an interest of the debtor is not property of the estate if,

[a] *restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.*

The legislative history indicates § 541(c)(2) is intended to preserve restrictions on transfer of a *spendthrift trust.* H.R.Rep.95–595, 95th Cong., 1st Sess., 1976, 369 (1977); 124 Cong.Rec. S17413 (daily ed. Oct. 6, 1978) (Sen. DeConcini). The defendants argue an ERISA pension fund is such a spendthrift trust. Kansas, which follows the general rules and definitions of spendthrift trusts, defines a spendthrift trust as,

*a trust created to provide a fund for the maintenance of a beneficiary and at the same time to secure the fund against his improvidence or incapacity. Provisions against alienation of the trust fund by the voluntary act of the beneficiary or by his creditors are its usual incidents ....*

　　*　　*　　*　　*　　*　　*

*A person may not create a spendthrift trust for himself; that is he may not place his own property in trust for his own benefit and provide that the funds shall not be subject to the claims of his creditors.*

*In Re Estate of Sowers,* 1 Kan.App.2d 675, 680–81, 574 P.2d 224 (1977). Accord *Herd v. Chambers,* 158 Kan. 614, 149 P.2d 583 (1944); Restatement 2d Trusts § 152. An examination of the instant ERISA fund indicates it is not a traditional spendthrift trust. Generally, spendthrift trust funds can be reached to satisfy alimony, child support and taxes. See Note, Spendthrift Trusts—Validity in Kansas, 9 Washburn

L.J. 75, 78, 82 (1969). Where, however, it is the funds of the beneficiary that are being placed in trust, a spendthrift trust is not created. *In Re Estate of Sowers, supra.*

Furthermore, the funds in a spendthrift trust cannot be voluntarily or involuntarily alienated. 76 Am.Jur.2d Trusts § 148 (1975). Although the instant ERISA plan purports to proscribe alienation of trust funds, nevertheless the employee can withdraw funds at any time and use them to purchase a house or for use in the event of funeral expenses, tuition expenses, unemployment expenses, illness, disability and other financial hardships. Additionally, loans can be taken from the trust for any purpose which create liens against the individual's fund. Clearly this is not truly a restraint on alienation. Any restrictions imposed by the Plan are shortlived (maximum of 12 month suspension from contribution to Plan) and do not substantially affect the employee's ability to withdraw and alienate funds. Thus it is apparent that the funds in the instant ERISA plan are not exempt from execution because the fund fits the generally accepted definition of and is a spendthrift trust, but rather because of tax laws and regulations not intended to impair the bankruptcy laws. 29 U.S.C. § 1144(d).

A number of courts have recognized that tax deferring retirement funds are not spendthrift trusts. In *In Re Ross,* 18 B.R. 364 (N.D.N.Y.1982) (appeal from bankruptcy court), the district court held funds of a state retirement system plan containing an almost identical anti-alienation and execution clause as required by ERISA were property of the estate under § 541(a), and the retirement system was not a spendthrift trust under § 541(c)(2). Id. at 367–68. Accord, *In Re Dawson,* 13 B.R. 107, 4 CBC2d 1234 (M.D.Ala.1981) (Alabama state retirement system funds property of estate and system not spendthrift trust); *In Re Devall,* 9 B.R. 41 (Bkrtcy.M.D.Ala.1980) (Social Security Administration funds property of estate). In *In Re Baviello,* 12 B.R. 412 (Bkrtcy.E.D.N.Y.1981) the funds in a KEOGH account were in issue. KEOGH plans are required to have the same anti-alienation clause as an ERISA plan. The

court held the KEOGH plan funds were property of the estate under section 70a of the Bankruptcy Act. Accord, *In Re Witlin*, 640 F.2d 661 (5th Cir. 1981). The Code expands the concept of property of the estate and therefore, because KEOGH funds were property of the estate under the Act, they are also property of the estate under the Code. The court in *Baviello* also noted that § 541(c)(2) was not applicable to ERISA funds. *In Re Baviello, supra*, at 417, n. 6.

Moreover, the Court must query once again—why did Congress provide an exemption for ERISA funds under § 522(d), if the funds were part of a spendthrift trust and not property of the estate under § 541(c)(2)? The law of spendthrift trusts, the legislative history of § 541(a) and § 541(c)(2), the inferences to be drawn from § 522(d), and the case law all point to the conclusion that funds in which the debtor has a vested interest are property of the estate.

D. Effect of a Turnover Order on ERISA Plan Qualifications.

█ The Court does not believe that an order requiring the ERISA funds trustee to turn over the debtor's vested account interest would cause the Plan to lose its qualification under 26 U.S.C. § 401(a)(13). Revenue Ruling 80–27, 1980 C.B. 85–86, indicates an ERISA plan *will not lose its qualification . . . because the trustee complies with a court order* . . . .

The IRS has recently issued a Private Letter Ruling purporting to "disagree" with a bankruptcy court order requiring an ERISA Fund to honor a bankruptcy trustee's alleged garnishment order of an employee-debtor's interest in the ERISA Fund in a chapter 13 proceeding. See Private Letter Ruling # 8131020 (reported in CCH Tax Service). The IRS declared that if the ERISA Fund complied with the bankruptcy court order, the Fund would lose its qualification under 26 U.S.C. § 401(a)(13). Among other consequences, this would mean all employee participants in the ERISA Plan would immediately be subject to income taxation rather than simply the estate in this instance.

This Court is at a loss to understand how an administrative body can "disagree" with a court order, and threaten to penalize parties to the court action for complying with a court order and harm innocent participants in an ERISA Plan. In the Private Letter Ruling the IRS has ignored 29 U.S.C. § 1144(d) and the entire Bankruptcy Code. The ERISA tax code provisions, in this instance, have expressly been subordinated to all other federal legislation. 29 U.S.C. § 1144(d). The IRS may be unaccustomed to this subordinated role, but it cannot ignore the plain language of 29 U.S.C. § 1144(d). In the Private Letter Ruling, the IRS distinguishes alimony and support garnishments from bankruptcy trustee garnishments. In the case of alimony and support garnishments, courts were ordering ERISA funds to honor the state law garnishments and the IRS in a revenue ruling "approved" of these garnishments and declared funds would not lose their qualification by honoring the garnishment order. This revenue ruling approved of the court rulings without any statutory ERISA authority and in the face of contrary treasury regulations. In the case of the bankruptcy trustee, the IRS has "disapproved" of the federal court order, in the face of express ERISA statutory authority in addition to 11 U.S.C. § 541(a), (c)(1)(A) and (c)(2) and § 522(d)(10)(E) to the contrary. Statutorily, the only distinction that could be made is that the IRS has approved garnishments arguably prohibited by ERISA and disapproved or intends to disapprove purported garnishments allowed by ERISA. This is not a distinction but rather an illogical irony. In truth in this case the trustee is the debtor and his exercise of rights is the debtor's exercise.

The IRS, however, is not a party in this action and is not before this Court. Therefore, this Court cannot enjoin the IRS from enforcing its Private Letter Ruling policy against the defendants. If the IRS attempts to disqualify the instant ERISA Plan at some later date, the Court feels confident the defendants would successfully challenge any IRS rulings of disqualification.

**440**

III.   Conclusion.

In summary, the Court holds that the instant ERISA Plan funds are property of the estate, pursuant to § 301 and § 541, the termination upon bankruptcy clause (Plan ¶ 12.4) is of no effect and the Plan is not excluded from estate property under § 541(c)(2).  The Court is of the opinion the Plan should not lose its qualification by complying with a Court ordered and Congressionally mandated turnover.  The Court repeats that the issue of exemption by the debtor of vested ERISA funds is not before it.  The Court also notes that any right of the defendants to setoff the loan owed by the debtor against the funds under 11 U.S.C. § 553(a) was not raised and is not before the Court.  The defendants are to determine the value of the debtor's vested interest in his account in the instant ERISA Plan as of March 11, 1981 and pay the value of the debtor's account to the trustee under the provisions of § 542.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 752 and Rule 52(a) of the Federal Rules of Civil Procedure.