In re Charles W. GRAHAM, Debtor.

Edward F. SAMORE, Trustee, Plaintiff,

v.

Charles W. GRAHAM, Trustee of the Charles W. Graham, M.D. Ltd., Profit Sharing Plan Trust, Defendant.

Bankruptcy No. 81–04153.
Adv. No. 81–0565.

United States Bankruptcy Court,
N.D. Iowa, W.D.

Oct. 18, 1982.

Donald H. Molstad, Sioux City, Iowa, for plaintiff.

Edward F. Samore, Sioux City, Iowa, for trustee/plaintiff.

Robert L. Fanter and Rodney Kubat, Des Moines, Iowa, for defendant.

Findings of Fact, Conclusions of Law and ORDER Granting Bankruptcy Trustee's Petition for Turn Over of Debtor's Interest in ERISA Benefits, with Memorandum.

WILLIAM W. THINNES, Bankruptcy Judge.

The matter before the Court is the bankruptcy trustee's complaint requesting an order directing the pension fund trustee to turn over to the estate the debtor's interest in the proceeds of a pension and profit sharing fund. Trial was had on the matter. Edward F. Samore, bankruptcy trustee, Donald H. Molstad, attorney for the trustee, and Rodney P. Kubat, attorney for the defendant, were present. The parties were ordered to submit briefs and the matter was taken under advisement. Having been fully advised, the Court now makes the following Findings of Fact, Conclusions of Law, and Orders.

## FINDINGS OF FACT

1. The debtor, Charles W. Graham, filed a Chapter 7 bankruptcy petition on April 24, 1981.

2. Graham was the sole stockholder, director and officer of Charles W. Graham, M.D. Ltd., a professional corporation (herein the "Corporation"). That Corporation formed a pension and profit-sharing trust (the "Fund") under the Employee Retirement Income Security Act of 1974 (ERISA). Graham is a trustee (the "Fund Fiduciary") and the primary beneficiary of the fund.

3. The Fund qualified as tax exempt under 26 U.S.C. § 401(a) (1976).

4. The Corporation made contributions to the Fund based upon its net profit during the previous fiscal year. The parties agree that the Corporation contributed $150,000 to the Fund for Graham's benefit and that his right to that money is 100% vested.

5. The Corporation's earnings were derived from Graham's services as a physician.

6. A written plan (the "Plan") governs the administration of the Fund.

7. The Plan provides that benefits under the Plan cannot be assigned or alienated. That provision reads as follows:

> 8.05 ASSIGNMENT OR ALIENATION: The participant or beneficiary shall not assign or alienate any benefit provided under the Plan, and the Trustee shall not recognize any such assignment or alienation. For this purpose, however, the Trustee shall not take into account a Participant's voluntary and revocable assignment of benefits he is receiving under the Plan provided the assignment or alienation does not exceed ten percent (10%) of any benefit payment and is not made for the purpose of defraying Plan administration costs. This Section 8.05 shall not prohibit the Trustee from making a loan to a participant or to a beneficiary provided the loan is secured by the nonforfeitable portion of the Participant's Accrued Benefit and the loan is exempt from the tax imposed by Code § 4975 by reason of Code § 4975(d)(1).

8. The prohibition on assignment and alienation is required by ERISA, 29 U.S.C. § 1056(d) (1976) and 26 U.S.C. § 401(a) (1976), in order to qualify the Fund as tax exempt.

9. Article VI of the Plan governs the "Time and Method of Payment of Benefits." That article provides that the method of payment may be by annuity contracts, fixed installments, or a lump sum amount. That article further provides for the time of payments:

> The payment of Nonforfeitable Accrued Benefits under the Plan to the Participant will begin not later than the 60th day after the close of the Plan Year in which ... the Participant terminates his service with the employer.

10. Another Plan provision provides a different time for payment of benefits:

> ¶ 5.03 TERMINATION OF SERVICE PRIOR TO NORMAL RETIREMENT AGE: Upon termination of a participant's employment prior to attaining Normal Retirement Age (for any reason other than death or disability), The Advisory Committee, in its sole discretion, may direct the Trustee to pay the Participant his nonforfeitable Accrued Benefit. The Advisory Committee must give its direction to the Trustee within ninety (90) days of the Participant's Termination of Employment ... If the Advisory Committee does not give the Trustee a direction to distribute, the Trustee shall continue to hold the Participant's Accrued Benefit in trust until the close of the Plan Year in which the Participant attains Normal Retirement Age, at which time the Trustee shall commence distribution of the Participant's nonforfeitable Accrued Benefit in accordance with the provisions of Article VI.

11. The Plan defines the Advisory Committee as the Corporation's Board of Directors. Plan ¶ 1.05. In this case, Graham as the sole director of the Corporation constituted the Advisory Committee.

12. On April 21, 1981, ¶ 5.03 was amended to read:

The Trustee shall continue to hold the Participant's Accrued Benefit in trust until the close of the Plan Year in which the Participant attains Normal Retirement Age, at which time the Trustee shall commence distribution of the Participant's nonforfeitable Accrued Benefit in accordance with the Provision of Article VI.

13. On April 24, 1981, the same date he filed his Chapter 7 bankruptcy petition, Graham terminated his employment with the Corporation.

14. On June 12, 1981, Graham resigned from the positions of officer and director of the Corporation.

15. On July 10, 1981, the bankruptcy trustee was elected sole director of the Corporation. The Corporation then rescinded the amendment of ¶ 5.03 retroactive to April 24, 1981.

16. Graham has filed an amended B–4 schedule claiming his interest in the Fund as exempt property under 11 U.S.C. § 522(b)(2)(A) (Supp. IV 1980).

## CONCLUSIONS OF LAW

1. Graham's interest in the Fund is property of the bankruptcy estate under 11 U.S.C. § 541(a)(1) (Supp. IV 1980).

2. The Plan's restriction on alienation and assignment does not except Graham's interest in the Fund from the estate pursuant to 11 U.S.C. § 541(c)(2) which allows a beneficiary's interest in a spendthrift trust to be excepted from the estate.

3. Graham's interest in the Fund is not exempt under 11 U.S.C. § 522(b)(2)(A) which allows exemptions pursuant to nonbankruptcy federal law.

4. The bankruptcy trustee is entitled to receive Graham's interest in the Fund which is the right to a lump sum payment of $150,000 subject to whatever ERISA taxes and penalties may be imposed.

## ORDERS

IT IS THEREFORE ORDERED that the bankruptcy trustee's request for an order directing the pension fund trustee to turn over the fund shall be, and hereby is, granted.

IT IS FURTHER ORDERED that Graham turn over to the bankruptcy trustee $150,000 subject to whatever ERISA taxes and penalties may be imposed.

## MEMORANDUM

Charles W. Graham has filed a Chapter 7 bankruptcy petition. Charles W. Graham, M.D. Ltd., a professional corporation (the "Corporation"), made contributions to a pension and profit sharing trust (the "Fund") for employee Graham's benefit. The Fund qualifies for tax exempt status under the Employee Retirement Income Security Act of 1974 (ERISA). Graham is not only an employee of the corporation and a beneficiary of the Fund, but is also a Fund trustee (the "Fund Fiduciary"). Pursuant to the parties' stipulation, Graham's vested interest in the Fund is $150,000. The bankruptcy trustee has requested an order directing Graham, as Fund Fiduciary, to turn over to the estate Graham's beneficial interest in the Fund. The issues presented by the bankruptcy trustee's turnover complaint are:

1. Is Graham's interest in the Fund property of the bankruptcy estate under 11 U.S.C. § 541(a)(1)?

2. If Graham's interest in the Fund is property of the estate, is he entitled to exempt that interest from the estate under 11 U.S.C. § 522(b)(2)(A) pursuant to an exemption provided by other federal law, i.e., 29 U.S.C. § 1056(d) and 26 U.S.C. § 401(a)?

3. If Graham's interest in the Fund is non-exempt property of the estate, what is Graham's interest in the Fund that the estate is entitled to?

## I. PROPERTY OF THE BANKRUPTCY ESTATE UNDER § 541(a)(1)

The Bankruptcy Reform Act of 1978 provides that the commencement of a case creates an estate. That estate encompasses all of the debtor's "legal and equitable interests ... in property as of the commencement of the case." 11 U.S.C. § 541(a)(1)

(Supp. IV 1980). Non-bankruptcy law defines what the debtor's interest in property is, while bankruptcy law determines whether that interest passes to the bankruptcy trustee as property of the bankrupt's estate. *In re State of Missouri,* 7 B.R. 974 (E.D.Ark.1980); *In re Ross,* 18 B.R. 364 (N.D.N.Y.1982). As the legislative history clearly indicates and the courts have consistently recognized, the scope of § 541(a)(1) is very broad. H.R.Rep. No. 595, 95th Cong., 1st Sess. 367 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; *In re Koch,* 14 B.R. 64 (Bkrtcy.D.Kan. 1981); *State of Missouri v. U.S. Bankruptcy Court for E.D. of Arkansas,* 647 F.2d 768 (8th Cir.1981); *In re Ross,* 18 B.R. 364 (N.D. N.Y.1982); *In re Shore Air Conditioning & Refrigeration, Inc.,* 18 B.R. 643 (Bkrtcy.D. N.J.1982).

Graham has an interest in the Fund because of his participation in the Plan while he was an employee of the Corporation. The parties stipulate that Graham's interest is 100% vested.[1] Whatever his interest in the Fund is, it is property of the estate under the broad scope of § 541(a)(1).

A similar question arose in *In re Threewitt,* 20 B.R. 434 (Bkrtcy.D.Kan.1982). In *Threewitt,* the court rejected the fund fiduciary's argument that a Chapter 7 debtor's vested interest in a tax qualified ERISA fund was not property of the estate and ordered the debtor's vested interest to be paid to the bankruptcy trustee. This Court finds the *Threewitt* court's reasoning to be persuasive and therefore rejects the Fund Fiduciary's argument that Graham's interest in the Fund is not property of the estate.

The *Threewitt* court looked to 11 U.S.C. § 541(c)(1)(A) as an expression of Congressional intent to include all of the debtor's interests in property within the property of the estate. That section provides that "an interest of the debtor in property becomes property of the estate . . . notwithstanding any provision (A) that restricts or conditions transfer of such interest by the debtor." The Fund Fiduciary argues that Graham's interest is not property of the estate because the trust agreement restricts alienation or assignment of the interest by the debtor. Plan ¶ 8.05. That restriction is necessary in order for the Plan to qualify under ERISA as tax exempt. 26 U.S.C. § 401(a)(13). In § 541(c)(1)(A), Congress expressly invalidated restrictions on transfers of interest. Such restrictions in this Plan cannot prevent Graham's interest from becoming estate property. Although ERISA and the Bankruptcy Code conflict, the *Threewitt* court held that ERISA provisions do not supersede or modify the Bankruptcy Code. *See* 29 U.S.C. § 1144(d).[2] *Threewitt,* 20 B.R. at 437. This Court agrees that the Bankruptcy Code overrides ERISA. Accordingly, 11 U.S.C. § 541(c)(1) invalidates this fund's restriction on assignment and alienation.

The Fund Fiduciary makes another argument in order to withdraw Graham's interest in the fund from the estate. That argument is that the restriction on Graham's transfer of his interest in the Fund is enforceable under non-bankruptcy law and therefore falls within the exception from estate property provided by § 541(c)(2).[3] That section provides:

1. The Plan provides:

¶ 5.05 VESTING SCHEDULE: A participant's Accrued Benefit derived from Employer contributions shall be one hundred percent (100%) nonforfeitable upon and after his attaining Normal Retirement Age, or if his employment terminates as a result of death or disability. If a Participant's employment terminates prior to Normal Retirement Age for any reason other than death or disability, then for each Year of Service he shall receive a nonforfeitable percentage of his Accrued Benefit (the balance being a forfeiture) equal to one hundred percent (100%).

2. That section provides: "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States . . ."

3. § 541(a)(1) and (c)(1) expressly accommodate the exception from property of the estate provided by § 541(c)(2).

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title.

The Fund Fiduciary contends that under ERISA, the applicable non-bankruptcy law, the restriction on the debtor's transfer of his beneficial interest is enforceable. The bankruptcy trustee, however, argues that § 541(c)(2) protects the debtor's interest in a traditional spendthrift trust and this Fund is not such a trust.

This Court agrees with the bankruptcy trustee that, notwithstanding the broad language, § 541(c)(2) is intended to protect traditional spendthrift trusts. The Congressional committee reports clearly show that intent:

Paragraph (2) of subsection (c), however, preserves restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable nonbankruptcy law.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 369 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 83 (1978), U.S.Code Cong. & Admin.News 1978, p. 6325. Other courts are in agreement with such a reading of § 541(c)(2). *Threewitt,* 20 B.R. at 438; *In re Howerton,* 21 B.R. 621 (Bkrtcy.N.D.Tex.1982); *In re Kelleher,* 12 B.R. 896 (Bkrtcy.M.D.Fla.1981); *In re Miller,* 16 B.R. 790 (Bkrtcy.D.Md. 1982); *Ross,* 18 B.R. at 367. Accordingly, the issue becomes whether this ERISA Fund is a spendthrift trust which is excepted from the estate pursuant to § 541(c)(2).

■ Iowa [4] defines a spendthrift trust as a trust created for the purpose of maintaining a designated beneficiary and also insulated from the claims of the beneficiary's creditors. The trustee of such a trust cannot be compelled to pay trust funds to the beneficiary's creditors. *Merchants National Bank v. Crist,* 140 Iowa 308, 312, 118 N.W. 394, 395 (1908); *In re Bucklin's Estate,* 243

Iowa 312, 316, 51 N.W.2d 412, 414 (1952); Bogert, *Law on Trusts,* § 40 comment (5th ed. 1973). If this Court accepts the Fund Fiduciary's argument that this Fund's restriction on transfer makes the Fund a spendthrift trust under § 541(c)(2), the Fund Fiduciary could not be compelled to turn over Graham's interest in the Fund to the estate.

■ In a valid spendthrift trust, the settlor cannot also be the beneficiary. *DeRouse v. Williams,* 181 Iowa 379, 389, 164 N.W. 896, 899 (1917); *Harrison v. City National Bank of Clinton,* 210 F.Supp. 362, 370 (S.D.Iowa 1962); Bogert, *Law on Trusts,* § 40 comment (5th ed. 1973). The Fund Fiduciary contends the settlor and beneficiary are not the same, as the Corporation is the settlor and Graham is the beneficiary. Graham's earnings from services were funnelled through the corporate form and then deposited in the trust for his benefit. Even though, in form, the settlor is the Corporation, Graham's earnings from his medical practice furnished the corpus of the trust. Graham is therefore both the settlor and the beneficiary of the Fund. Consequently, the Fund is not a spendthrift trust that is enforceable under non-bankruptcy law.

At least one other court has looked through the formalities of a trust arrangement similar to that involved in this case and found that no valid spendthrift trust existed because the trustee, settlor and beneficiary were one and the same person, the debtor. In *In re Klayer,* 20 B.R. 270 (Bkrtcy.W.D.Ky.1981), the debtor was the sole shareholder of a business and also the trustee and the beneficiary of a retirement and trust plan instituted by the business. The debtor ceased contributions and terminated the plan which had the effect of vesting all benefits in the debtor. The sole asset of the trust was a home in which the debtor resided rent free. Outstanding debts secured by the home property inured to the debtor's benefit. The bankruptcy

---

**4.** Although the Bankruptcy Reform Act of 1978 reduced reliance on nonbankruptcy law, 4 *Colliers on Bankruptcy* ¶ 541.02 (15th ed. 1982), § 541(c)(2) explicitly relies on nonbankruptcy law. The courts that have considered the question have relied upon the law of the state in which they sit. *Threewitt,* 20 B.R. at 438; *Ross,* 18 B.R. at 367; *In re Clark,* 18 B.R. 824, 830 (Bkrtcy.E.D.Tenn.1982).

trustee contended that the debtor's interest in the trust asset, the home, was property of the estate. The debtor argued that the trust was an enforceable spendthrift trust under Kentucky law and thus his interest in the trust was excepted from the estate under § 541(c)(2).

The *Klayer* court rejected the debtor's argument. Even though all transactions concerning the trust property appeared to be technically correct, the court noted that the debtor was the settlor, trustee, and beneficiary of the trust. The court ignored the corporate form that separated the beneficiary from the settlor, and held that the trust was not an enforceable spendthrift trust under Kentucky law and not excepted from the estate under § 541(c)(2).

A comparable situation exists in this case. Graham is the settlor, beneficiary, and trustee of the Fund. Under Iowa law, this Fund's restriction on transfer would not be an enforceable spendthrift trust.

Accordingly, this Court holds that Graham's interest in the ERISA Fund is property of the estate under § 541(a)(1) and not excepted from the estate under § 541(c)(2). *Ross,* 18 B.R. at 368; *Threewitt,* 20 B.R. at 438; *In re Clark,* 18 B.R. 824 (Bkrtcy.E.D. Tenn.1982); *cf, In re Nichols,* 1 C.B.C. 765 (Bkrtcy.S.D.Fla.1980).[5]

## II. § 522(b)(2)(A) EXEMPTION

The Fund Fiduciary argues that even if Graham's interest in the Fund is estate property,[6] § 522(b)(2)(A) exempts that property from the estate.[7] That section provides:

Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate ... (2)(A) any property that is exempt under Federal Law, other than subsection (d) of this section ...

The Fund Fiduciary contends 26 U.S.C. § 401(a)(13) and 29 U.S.C. § 1056(d)(1) provide an exemption from creditors' claims under other Federal law within the meaning of § 522(b)(2)(A). In support of that reasoning, he argues that in a non-bankruptcy context, the only class of creditors allowed to assert claims against an ERISA pension and profit sharing fund are those creditors asserting support claims against the debtor. *See, Operating Engineers' Local # 428 Pension Trust Fund v. Zamborsky,* 650 F.2d 196 (9th Cir.1981) and the cases cited therein at 198.

ERISA requires that a beneficiary's interest in the fund not be subject to alienation or assignment. 29 U.S.C. § 1056(d)(1). In order to qualify for exemption, the plan instrument has to contain such a restriction. 26 U.S.C. § 401(a)(13). The precise issue raised by the Fund Fiduciary is whether the fact that ERISA requires an anti-alienation and assignment clause in the plan means that ERISA provides an exemption from creditor's claims within the meaning of § 522(b)(2)(A).

The legislative history of the Bankruptcy Code lists some exemptions from creditors provided by other federal laws. These include Foreign Service Retirement and Disability Payments, 22 U.S.C. § 1104; Civil Service Retirement Benefits, 5 U.S.C. §§ 729, 2265; and Railroad Retirement Act Annuities and Pensions, 45 U.S.C. § 228(L). H.R.Rep. No. 595, 95th Cong., 1st Sess. 360 (1977); S.Rep. No. 95th Cong., 2d Sess. 75 (1978). Even though ERISA was in effect at the time the Bankruptcy Code was debated and passed, ERISA is notably absent

---

**5.** This Court notes that Congress provided an explicit exemption for tax-qualified ERISA funds in § 522(d)(10)(E). It is reasonable to infer that Congress would not have provided such an exemption if the debtor's interest in such funds was not property of the estate under § 541(a)(1) or was excepted from the estate under § 541(c)(2). *In re Threewitt,* 20 B.R. at 437, 439.

**6.** This Court allowed Graham to amend his B–4 schedule claiming the Fund as exempt because his original schedules did not even list his interest in the Fund as property. Graham amended the schedule when the bankruptcy trustee claimed the Fund as estate property.

**7.** The debtor does not claim the funds as exempt pursuant to § 522(d)(10)(E) as support reasonably necessary for the debtor and his dependents.

from the listing of other federal exemptions.

■ A comparison of the federal laws listed above with the ERISA provisions is instructive. Congress, in providing for exemptions from creditors' processes, has been very explicit. The exemption for Civil Service Retirement benefits is illustrative:

> The money mentioned by this subchapter is not assignable, either in law or equity ... or subject to execution, levy, attachment, garnishment, or other legal process, except as otherwise may be provided by Federal laws.

5 U.S.C. § 8346 (moved from 5 U.S.C. § 2265). In this provision Congress directly exempted the Civil Service Benefits from creditors. In contrast, ERISA only requires that the plan contain a restriction on alienation and assignment in order to qualify for ERISA tax benefits. That requirement is not an exemption from creditors' process provided by federal law. If Congress had intended that ERISA would provide such an exemption, a provision similar to the provision quoted above could have been enacted. The fact that they did not do so leads this Court to conclude that an ERISA fund is not within the exemption from the bankruptcy estate provided by other federal law under § 522(b)(2)(A). *See In re Watson,* 13 B.R. 391 (Bkrtcy.M.D.Fla.1981).

## III. GRAHAM'S INTEREST IN THE FUND

Having determined Graham's interest in the Fund is non-exempt property of the estate, it is necessary for this Court to determine what is Graham's interest in the Fund to which the estate is entitled. The bankruptcy trustee has requested that the full $150,000 amount of Graham's vested interest be turned over to the estate. The Fund Fiduciary argues that since Graham has no present right to the pension benefits, the bankruptcy trustee likewise has no present right to such benefits. Both parties have agreed that Graham's interest is 100% vested.

The relevant inquiry is what Graham's interest in the Fund was at the time the bankruptcy petition was filed. 11 U.S.C. § 541(a)(1). The most logical place to turn to answer that question is the Plan itself. The Plan provides in Article VI for the "Time and Method of Payment of Benefits." The method of distribution can be either life income under various annuity contracts, installments for a fixed period of time, or a lump sum payment. The time for payment of benefits is also governed by Article VI:

> The payment of Nonforfeitable Accrued Benefits under the Plan to the Participant will begin not later than the 60th day after the close of the Plan Year in which ... the Participant terminates his service with the employer.

In spite of the Article VI provisions, the Fund Fiduciary argues that amended ¶ 5.03 restricts distribution of the plan benefits and Graham is not entitled to any benefits until retirement age. On July 10, 1981, the Corporation rescinded the amended ¶ 5.03 retroactive to April 24, 1981, the date the bankruptcy petition was filed. As that is the operative date for the determination of Graham's interest, the amended ¶ 5.03 has no bearing on this case. The Fund Fiduciary argues, in the alternative, that the original ¶ 5.03 restricts the distribution of benefits to Graham. That paragraph provides that the Advisory Committee has discretion to direct payment of benefits within ninety days after a participant terminates employment. If such direction is not given, the Fund Fiduciary is to hold the accrued benefits until the participant attains retirement age. The Fund Fiduciary argues that since no direction was given to distribute benefits to Graham within the ninety-day time period, neither Graham nor the bankruptcy trustee is entitled to any payment.

The provisions of Article VI and ¶ 5.03 conflict. Under Article VI, the payments *must* begin within sixty days after the close of the plan year in which Graham terminated his employment. Under ¶ 5.03, the Advisory Committee has discretion to not pay Graham any benefits until he reaches retirement age. Those two provisions are irreconcilable. However, it is not necessary

for this Court to resolve the conflict. Under either provision, the bankruptcy trustee is entitled to presently receive the benefits due Graham.

If the distribution of benefits is controlled by Article VI of the Plan, Graham would have a right to payment of such benefits within sixty days after the close of the plan year in which he terminated his employment. On the date the bankruptcy petition was filed, Graham resigned from his employment. That action fixed Graham's right to receive benefits. The fact that Graham had no right to receive actual payment of his nonforfeitable benefits until the end of sixty days after the close of the plan year in which he terminated his employment, does not preclude the bankruptcy trustee's claim to those benefits. Graham's right to receive those benefits was fixed on the date he filed for bankruptcy. That right to receive payments ripened into the right of actual payment with the mere passage of time.

Such a situation is similar to that presented where the debtor has the right to receive an income tax refund based on pre-petition withheld wages, but the refund is not legally payable until after the filing of the bankruptcy petition. In such circumstances, the courts consistently hold the debtor's right to receive the income tax refund is part of the bankruptcy estate and the refund must be turned over to the bankruptcy trustee upon actual receipt by the debtor. *In re Koch,* 14 B.R. 64 (Bkrtcy. D.Kan.1981); *In re DeVoe,* 5 B.R. 618 (Bkrtcy.D.Ohio 1980).

■ For like reasons, this Court holds that under Article VI, Graham's right to receive the benefits was fixed on the date the bankruptcy petition was filed because he terminated his employment on that date. That right passed to the bankruptcy trustee pursuant to § 541(a)(1). The time period has now passed and Graham is entitled to a present distribution of benefits. Therefore, under Article VI of the Plan, the trustee is entitled to a lump sum payment of Graham's interest, subject to whatever ERISA taxes and penalties may be imposed.

If the distribution of benefits is not controlled by Article VI and is instead controlled by original ¶ 5.03, the bankruptcy trustee nevertheless still has a present right to those benefits. The original ¶ 5.03 gave the Advisory Committee discretion to direct the Fund Fiduciary to pay the benefits upon an employee's termination of employment. The Plan further provides that the directors of the Corporation constitute the Advisory Committee. Plan ¶ 1.05. As the sole director of the Corporation on the date the bankruptcy petition was filed, Graham was the Advisory Committee. On that date he also terminated his employment. Therefore, under ¶ 5.03 Graham had the right to order the Fund Fiduciary to pay the benefits to himself. The bankruptcy trustee can take an action that Graham could have taken on the date the bankruptcy petition was filed. 11 U.S.C. § 108(a); *In re T.C.I., Ltd.,* 21 B.R. 876 (Bkrtcy.N.D.Ill.1982); H.R.Rep. No. 595, 95th Cong., 1st Sess. 318 (1977); S.Rep. No. 989, 95th Cong. 2nd Sess. 30 (1978). Accordingly, the bankruptcy trustee can assert Graham's right, as the Advisory Committee, to order the fund fiduciary to pay benefits under the plan.

The Fund Fiduciary argues that the expiration of the ninety-day period, in which the Advisory Committee was to exercise its discretion, precludes the bankruptcy trustee from now ordering payments. That argument is without merit. The bankruptcy trustee has an extended period of time in which to take an action as long as the debtor could have taken the action on the date the bankruptcy petition was filed. 11 U.S.C. § 108(a). In this case, the bankruptcy trustee has acted well within the extended time period. Accordingly, the bankruptcy trustee can exercise Graham's right to order the Fund Fiduciary to pay the benefits. As this Court has already determined that Graham's interest in the fund is non-exempt property of the estate, the bankruptcy trustee's order to the Fund Fiduciary to pay the benefits to Graham will inure to the benefit of the bankruptcy estate.

This Court concludes that under either Article VI or the original ¶ 5.03, Graham's interest in the Fund is the present right to receive a lump sum payment of his vested benefits, $150,000, subject to whatever ERISA taxes and penalties may be imposed.