**In re Ronald H. WERNER, Debtor.**

**Bankruptcy No. 3–82–723.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

July 6, 1983.

Timothy D. Moratzka, Hastings, Minn., for trustee.

Richard Bins, Stewartville, Minn., for creditor, Heather Sue Werner.

Roger E. Peterson, Rochester, Minn., for debtor, Ronald H. Werner.

MEMORANDUM ORDER

JOHN J. CONNELLY, Bankruptcy Judge.

The Debtor in this case filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on April 21, 1982. On June 8, 1982, one of his two creditors, Heather Sue Werner, filed an objection to claimed exempt property. On June 16, 1982, the Trustee, Timothy D. Moratzka, filed an identical objection. On June 23, 1982, the Debtor filed a motion for relief

and determination of objections to claimed exempt property.

The matter came on for hearing on August 27, 1982 in Rochester, Minnesota. At the conclusion of the hearing, the Court requested that the parties submit briefs on the issues of: 1) Whether the Debtor's Teacher Retirement Account (hereinafter "TRA") is property of the estate pursuant to 11 U.S.C. § 541; and 2) Whether the Debtor may claim the TRA as exempt under 11 U.S.C. § 522(d)(10).

Now, upon the evidence and the arguments of counsel, the Court makes the following Memorandum Order pursuant to Bankruptcy Rule 752:

## I

The Debtor is forty-eight years of age. He is a teacher for Independent School District # 535 in Rochester, Minnesota. He began his teaching career with that school district in 1959. As a part of his employment, membership in the Teacher Retirement Association (TRA) was a mandatory requirement under M.S.A. 354.41(2). At the time he became eligible for membership in 1959, the Minnesota law then in effect permitted him to elect not to be covered under the federal social security law and to elect to make contributions solely to the TRA account. After exercising this election, the Debtor's employer has since made the mandatory deductions from his salary over the years and through June of 1981 his TRA contribution totaled $23,756.22.

On April 6, 1981, the Debtor and his wife, Heather Sue Werner, were granted a divorce by the Honorable Lawrence E. Agerter, County Court Judge of Olmsted, State of Minnesota. The only issue in real dispute was the division of the retirement pension account of Mr. Werner.

The Family Court awarded to the Debtor all of his rights and interests to his vested TRA fund which, at that time, amounted to $22,180.00. The Court required the Debtor to pay one-half of that fund to Heather Sue Werner, which amounted to $11,090.00. From that amount, the Court subtracted one-half of the amount in Heather's pension, $595.75, and one-half of the excess personal property already awarded to Heather in the amount of $300.00. The balance then owing Heather Sue Werner was $10,194.25.

The Court then directed the following payment schedule:

$5,000.00 payable immediately from respondent's share of the proceeds from the sale of the parties' homestead now held in a trust savings account, and the balance of $5,194.25 to be paid in annual installments of $1,000.00 per year commencing on the first day of January, 1982, and continuing on the first day of each year thereafter until paid, together with interest at the computed statutory rate for judgments in Minnesota courts. Petitioner shall be awarded judgment in the sum of $5,194.25 against respondent with execution on said judgment to be stayed pending respondent's compliance with the payment schedule as set forth above. In the event of respondent's failure to make installment payments as set forth above, then petitioner shall be entitled to proceed to collect the full money judgment or any balance then due.

Subsequently, on April 16, 1982, a hearing was held before the same Family Court as a result of the Debtor defaulting on his January 1, 1982 $1,000.00 installment payment. At that hearing, the Debtor acknowledged his failure to pay and advised the Court that the payment would not be paid in the future and that he was consenting to entry of judgment against him and the lifting of the stay of execution in the total amount of $6,209.68, which included the attorney's fees and interest owing.

## II

The Debtor's A–3 bankruptcy schedule of creditors lists only two debts: his property settlement debt to his former spouse in the estimated amount of $5,888.00, and the $350.00 attorney's fees awarded against him pursuant to the April 16, 1982 State Court hearing and Order dated April 27, 1982.

The Debtor's TRA account through June of 1981 was listed on his B–3(b) bankruptcy property schedule in the amount of $23,765.22. The Debtor listed additional assets on his B–2 bankruptcy schedule valued at $8,750.00, which included $6,200.00 in cash. On the B–4 bankruptcy exemption schedule, the Debtor elected the federal exemptions provided by 11 U.S.C. § 522(d) and claimed both the TRA account and $6,200.00 cash as exempt pursuant to § 522(d)(10) and (d)(5) respectively.

The Trustee and the creditor object to the Debtor claiming the TRA fund as a federal exemption. Both the Trustee and the creditor assert that 11 U.S.C. § 522(d)(10) does not include this specific teacher's retirement fund. The Debtor maintains that the TRA fund is either not property of the estate under 11 U.S.C. § 541 or, in the alternative, property exempt pursuant to § 522(d)(10).

## III

### PROPERTY OF THE ESTATE

Under the old Bankruptcy Act, not all property of a debtor came into the estate. Property claimed by the debtor as exempt as well as property that a creditor could not "reach", i.e. levy upon, did not pass to a trustee. However, this was changed under the Bankruptcy Reform Act of 1978. A comprehensive concept is employed under the Code: the "estate" Section 541(a)(1) states:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, *all legal or equitable interests* of the debtor in property as of the commencement of the case.

As the Supreme Court said in *United States v. Whiting Pools, Inc.,* —— U.S. ——, ——, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983), the statutory language of § 541(a) reflects Congress' intent to include a very broad range of property in the estate. The House and Senate Reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad: "[the estate] includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act § 70a(6)) and all other forms of property currently specified in section 70a of the Bankruptcy Act." H.R.Rep. No. 95–595, p. 367 (1977); S.Rep. No. 95–989, p. 82 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787, 6323. It is clear that the scope of the estate under the Code was intended to be broader than under the Act.

However, questions as to the includability of property in the estate arise when there are restrictions put on the transfer of the debtor's property. 11 U.S.C. § 541(c)(1) provides generally that restrictions on transfer will be inoperative to prevent inclusion in the estate. However, § 541(c)(2) preserves restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under nonbankruptcy law, e.g., a spendthrift trust.

The Debtor argues that because of the alienation restrictions imposed by M.S.A. § 354.10, the TRA falls within the meaning of "trust" under § 541(c)(2) and, therefore, is not part of the estate. M.S.A. § 354.10 provides:

The right of a teacher to avail himself of the benefits provided by this chapter, is a personal right only and shall not be assignable. All moneys to the credit of a teacher's account in the fund or moneys payable to him from the fund shall belong to the state of Minnesota until actually paid to the teacher or his beneficiary pursuant to the provisions of this chapter. Any power of attorney, assignment or attempted assignment of a teacher's interest therein, by a teacher or his beneficiary, including actions for divorce, legal separation, and child support, shall be null and void and the same shall be exempt from garnishment or levy under attachment or execution and from taxation under chapter 29.

Although statutorily required to become a member in the Teacher Retirement Asso-

ciation, the TRA account was created by the Debtor's voluntary election not to be covered under federal social security law, and instead to make monthly contributions to his TRA account which are matched by his employer.

Various courts have dealt with similar claims. The Court in *Matter of Witlin,* 640 F.2d 661 (5th Cir.1981) determined that three restricted trusts of the Debtor, which were part of his Keogh Plan, were property of the estate despite provisions prohibiting assignment or alienation. In discussing the limitation of § 522(c)(2), the Court stated:

> A spendthrift trust is one that is created with the view of providing a fund for the maintenance of another, and at the same time securing it against his own improvidence or incapacity for self protection. The typical spendthrift trust is one in which the life's cestui's right to recover income is inalienable, either by his own act or that of his creditors, during all or a part of the life of the beneficiary.

Id. at 663. The *Witlin* court reasoned that since it was the debtor's own act that created the trust, it was not within the exception provided by § 522(c)(2).

■ Applying the *Witlin* court's rationale to the present case logically brings me to the same conclusion. As in *Witlin,* Ronald Werner also created his own trust. In addition, unlike the spendthrift trust or the Keogh trust in *Witlin,* the TRA account does not prohibit withdrawal of funds upon resignation. All the Debtor needs to do is resign and make a demand for payment and the State must turn over the funds. Clearly, it has none of the protections found in a real spendthrift trust.

A similar decision was found by the court in *In re Threewitt,* 20 B.R. 434, 9 B.C.D. 38 (Bkrtcy.Kan.1982). In *Threewitt,* the debtor argued that his ERISA (Employee Retirement Investment Savings Account) was not property of the estate because of § 541(c)(2). The court held that the ERISA did not properly fall within § 541(c)(2) because that section was not intended to protect those who created a trust for themselves. The *Threewitt* court emphasized

the unfairness that would result if a person was allowed to place his own property in trust for his own benefit and provide that the funds would be inaccessible to creditors. Minnesota courts have also recognized this limitation when defining the parameters of a spendthrift trust. See, e.g., *In re Estate of Moulton,* 233 Minn. 286, 46 N.W.2d 667 (1951).

Finally, the court in *In re Howerton,* 21 B.R. 621, 9 B.C.D. 296 (Bkrtcy.TX.1982) held that a debtor's IRA (Individual Retirement Account) is property of the estate despite the exception provided under § 541(c)(2). The court reasoned that because the debtor could withdraw the funds at any time, it was not a trust and not protected by § 541(c)(2). The *Howerton* court likened the IRA to an annuity and thus not excludable under § 541(c)(2). In the present case, Ronald Werner can also withdraw the funds at any time. The only prerequisite is that he quit his job. The only prerequisite to "cashing out" an IRA is a monetary penalty. In my mind, they are in a critical sense, indistinguishable and should be treated the same.

The estate is comprised of all property in which the Debtor has an interest on the date of the commencement of the case. Ronald Werner clearly had an interest in his TRA on April 21, 1982, which he valued at $23,765.22. I do not believe this TRA comes within the § 541(c)(2) exception to "property of the estate" and, therefore, it is part of the estate.

## IV

### EXEMPTIONS

■ The Debtor argues that if his TRA account is found to be part of the estate it should be declared exempt property pursuant to 11 U.S.C. § 522(d)(10)(E) and, in the alternative, § 522(d)(10)(A). 11 U.S.C. § 522(d)(10)(E) provides:

> (d) The following property may be exempted under subsection (b)(1) of this section:
>
> (10) The debtor's right to receive—

(E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time of the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. § 401(a), 403(b), 408, or 409).

This section limits the exemption "to the extent reasonably necessary for the support of the debtor..." See, e.g. *In the Matter of Parker,* 1 C.B.C.2d 103 (D.Ct.W.D.N.Y. 1979).

The Court in *In the Matter of Taff,* 10 B.R. 101, 4 C.B.C.2d 65 (Conn.1981) stated that in determining to what extent a pension is "reasonably necessary", one needs to take into account other income. In the present case, the Debtor is fully employed as a teacher with a salary of $20,000.00 per year. In fact, the Debtor continues to contribute to his TRA. This, coupled with the fact that the Debtor is not receiving any payments from his TRA, leads me to find that the TRA is not reasonably necessary for his support.

The situation presented by Ronald Werner is clearly distinguishable from the facts of *In re Donaghy,* 11 B.R. 677 (Bkrtcy.N.Y. 1981). In that case both debtors were over sixty years old, unemployed, and in poor physical health. After noting that the special needs of "retired, infirm and elderly debtors" should be taken into account, the court found a pre-petition lump sum payment to be a "pension fund payment" and exempt as funds necessary for the debtors' support. Clearly, the same result cannot be reached in this case where the Debtor is

forty-eight years old, employed full time, and in good health.

Even assuming that the fund was necessary for the Debtor's support, it still would not be exempt. Section 522(d)(10)(E) lists three exceptions to claiming a payment as exempt: 1) the plan was established by an insider; 2) such payment is on account of age or length of service; and 3) such plan does not qualify under certain sections of the Internal Revenue Code. The TRA falls under all three exceptions and thus does not fit the exemption provided by § 522(d)(10)(E).

Page 1 of the Handbook of Retirement Information provides:

Provisions of this law [1957] currently include all teachers in Minnesota public schools, state universities, community colleges, and all other educational institutions *maintained by the state,* except teachers employed by cities of the first class (Minneapolis, St. Paul, and Duluth) or by the University of Minnesota.

Although the Debtor is directly employed by the Rochester School District, the statement found in the TRA Handbook proves that he is also employed by the State of Minnesota, which qualifies the State as the inside employer who established this TRA plan. Therefore, the exception provided by § 522(d)(10)(E)(i) is met. Page 7 of the Handbook sets forth the eligibility requirements for various payment plans under the TRA fund. These are based on the acquired years of service and thus fall within the exception created by § 522(d)(10)(E)(ii). Finally, the TRA fund fails to qualify under any of the applicable Internal Revenue Code sections and thus meets the third exception of § 522(d)(10)(E)(iii). See also, *In the Matter of Szuets,* 22 B.R. 805 (Bkrtcy. Fla.1982) and *In re Clark,* 18 B.R. 824, 825 (Tenn.1982).

■ The Debtor contends that absent a finding that the TRA falls under 11 U.S.C. § 522(d)(10)(E) then it should be found exempt pursuant to § 522(d)(10)(A) which provides exemption status for a social security benefit, unemployment compensation, or a local public assistance benefit.

He argues that the TRA fund is very similar to a social security benefit. For instance, much like a social security benefit, the TRA provides that after working for so many years and making contributions thereto, a worker, including his dependents, becomes eligible for certain benefits whenever the worker dies or voluntarily retires at the requisite age. That is where the similarity ends. Unlike TRA, a social security wage earner does not have the option to resign from employment and then secure repayment of the funds paid into the social security fund. And, under social security law, an employee does not have authority to designate beneficiaries.

It is clear from the other plans included in § 522(d)(10)(A) that the intent was to preserve the subsistence level benefit plans for debtors who are in need. Had Congress intended for a teachers retirement fund to be included as an exemption, it would have created a specific provision for it. It is also clear that the Debtor in this case is not a debtor living at a subsistence level.

■ The Debtor argues that if the court deprives him of the TRA fund in his retirement years, he will be deprived of the guaranteed "fresh start". 11 U.S.C. § 522(b) provides that the debtor may exempt from property of the estate either under federal exemptions prescribed in subsection (d), or he may choose the exemptions to which he is entitled under nonbankruptcy federal law, or law of the state of his domicile.

Every state has enacted exemption laws that allow debtors to shield certain assets from the reach of creditors. The former Bankruptcy Act, which did not contain specific exemptions has been changed by the enactment of the Code which now provides the individual debtor with a choice between the state exemptions and the newly enacted federal exemptions. The debtor is now allowed to pick and choose several state law exemptions and the same time several bankruptcy exemptions.

Had the Debtor elected to exempt under the State exemptions, the Teacher's Retirement Fund would have qualified as exempt status pursuant to M.S.A. 354.11, which reads:

All moneys deposited by a teacher or member or deposited by any other person or corporation, municipal or private, to the credit of a teacher or member of a teachers retirement fund association organized pursuant to this chapter, and all moneys, rights, and interest or annuities due or to become due to a teacher, member, or annuitant, or their beneficiaries from any association shall not be assignable, shall be exempt from garnishment, attachment, and execution or sale on any final process issued from any court and shall not be subject to the estate tax provisions of this state. Amended by Laws 1967, c. 605 § 1, eff. May 21, 1967; Laws 1971, c. 789, § 7; Laws 1979, c. 217, § 10, eff. July 1, 1979; Laws 1979, c. 303, art. 3 § 31.

Instead, the Debtor elected the federal exemptions with the intent of keeping from the creditors both the $23,765.22 in the TRA account and the $6,200.00 in cash. This, in effect, is taking a double dip. The Debtor has attempted to avail himself of both the state and federal exemption systems at the same time.

Courts of Bankruptcy/Bankruptcy Courts are, and have always been, courts of equity. Equity regards that as being done what ought to have been done. Use of the provisions of the Bankruptcy Code presupposes good faith application. Here it is obvious that the Debtor by an ingenious application of the provisions of the Bankruptcy Code is attempting to thwart the intent and judgment of the District Court of the State of Minnesota. Clearly, Congress never intended such a result as would prevail here if the Debtor had his way.

Since Mr. Werner has not made an election of one exemption system, the Court will make it for him keeping in mind that each debtor is entitled to the best set of exemptions to provide the debtor with a fresh start. Consequently, this Court will select the state exemption for the Debtor.

ACCORDINGLY, IT IS ORDERED that the Debtor be and the same is hereby di-

rected to pay to the trustee the $6,200.00 in cash listed on the B–4 exemption schedule.