CENTRAL NAT. BANK OF CLEVELAND, TRUSTEE, *v.* EELLS, EXRX., ET AL.

(No. 673662—Decided November 1, 1965.)

*Messrs. Jones, Day, Cockley & Reavis* for plaintiff, defendant executrix and defendants Samuel Eells, Jr., and Marion Eells Scragg.

*Messrs. Diehm & Farber,* for defendant Virginia Eells Halasz.

*Mr. Sydney S. Friedman,* for guardian ad litem.

ANDREWS, Chief Referee. This case raises problems resulting from the settlement of a will contest. These problems relate to spendthrift trusts, renunciation, and the acceleration of remainders.

The petition was filed by Central National Bank of Cleveland, trustee under the last will and testament of Samuel Eells, and asks for instructions and other equitable relief.

Samuel Eells executed his will on July 15, 1960. He died on April 26, 1963. His will was admitted to probate on May 3, 1963.

Samuel Eells was survived by his wife, Agnes Nisbett Eells, who is the duly appointed executrix of his will, and by two daughters and a son. These are Virginia Eells Halasz, born on May 24, 1922; Marion Eells Scragg, born on March 12, 1937; and Samuel Eells, Jr., born on November 30, 1935.

Marion Eells Scragg and Samuel Eells, Jr., have two minor children apiece. The minor children are represented by a guardian ad litem, who is also the trustee for suit for unborn persons under Section 2307.131, Revised Code.

We are not concerned with the first three items of the will, which give the tangible personal property and the real property to Agnes N. Eells, the widow, as well as the one-half of the estate qualifying for the marital deduction.

Item IV, A of the will provides that if the testator's wife, Agnes N. Eells, survives him, the residue of his estate shall be given to the trustee thereinafter named, i. e., Central National Bank of Cleveland.

By Item IV, A, 1, the trustee is directed to distribute the net income from the trust estate to testator's wife, Agnes N. Eells, during her life.

Item IV, A, 2(a) specifies that after the death of testator's wife, if his daughter, Virginia, is then living, the trustee shall set aside forty per cent of the trust estate as a separate trust, the income to be paid to Virginia during her life. Upon the death of Virginia, the trustee is to distribute this separate trust estate to the persons and in the proportions provided in Item IV, A, 2(b), as if testator's wife had died at the time of Virginia's death.

Item IV, A, 2(b) provides that after the death of testator's wife, the balance of the trust estate (i. e., the 60%), or all of it if Virginia does not survive testator's wife, shall be distributed in equal shares to testator's son, Samuel, and testator's daughter, Marion. If either the son or daughter is not "then living," the share of such deceased child is to be distributed to his or her children "then living," in equal shares. If such deceased child is not survived by any "then living" children, his or her share is to be added to the share of the other child.

Item IV, D contains a so-called spendthrift clause. This is defined in the Restatement of Trusts 2d, Section 152 (2) (1959), as follows:

"A trust in which by the terms of the trust or by statute a valid restraint on the voluntary and involuntary transfer of the interest of the beneficiary is imposed is a spendthrift trust."

See also 2 Scott, Trusts, Section 150 (2d ed. 1956); Griswold, Spendthrift Trusts, Section 421, p. 490 (2d ed. 1947).

Following the spendthrift trust pattern, the clause in question makes the interest of any trust beneficiary inalienable, and provides for a termination of the trust in case of an attempted alienation, leaving any future payments to the discretion of the trustee. Obviously, this type of clause is designed for the financial protection of the beneficiaries.

On October 18, 1963, Virginia Halasz filed an action in the court of common pleas of this county to contest her father's will. On October 24, 1963, she filed an action in that court asserting a claim against the estate. Thereafter, during the pendency of those actions, the parties entered into a settlement agreement as a part of which both actions were dismissed with prejudice. In its journal entry of June 8, 1965, in the will contest action, the court, in approving the settlement, found that it constituted a fair and appropriate resolution of the issues in dispute and the rights of the parties, and was in the best interests of the estate and the beneficiaries in order to protect their rights under the will.

Under the terms of the agreement, Virginia Halasz received a lump sum payment from the estate and a transfer of certain corporate shares in trust for the benefit of her minor daughter. In consideration of this, she filed in the Probate Court a renunciation of all her rights under the will and testamentary trust, including all rights as an income beneficiary under Item IV, A, 2(a) or Item IV, B, 1.

Plaintiff is uncertain as to the proper action to be taken by it in the administration of the trust, particularly with respect to the effect of the renunciation upon its administration and upon the rights of the parties in interest; and it prays the direction and judgment of the court.

Answers filed by Agnes Eells, both as executrix and indi-

vidually, and by Virginia Halasz, Samuel Eells, Jr., and Marion Scragg, all deny that Virginia has any interest in the testamentary trust. In addition, Virginia's answer avers her renunciation.

All the above answers pray that the plaintiff trustee be directed to proceed with the administration of the testamentary trust without reference to the provisions of Item IV, A, 2(a) and Item IV, B, 1, which require distribution of income to Virginia Halasz, and as though she had predeceased Samuel and Agnes Eells.

The answers of the guardian ad litem for the minor children of Marion Scragg and Samuel Eells, Jr., and of the trustee for suit for unborn persons, deny the allegations of the petition and ask the court to protect the interests of the persons they represent. Inasmuch as the allegations relate to matters of record, no proof is necessary.

As asserted in the brief filed on behalf of the executrix, there is no longer any doubt about the power of the court of common pleas to effect a settlement in a will contest and dismiss the action without impaneling a jury. Section 2741.04, Revised Code, as amended in 1961.

The minor children of Marion Scragg and Samuel Eells, Jr., were not made parties to the will contest. Whether they should have been is not before me. In any event, they are parties to the present action, and no objection has been made by their guardian ad litem to the validity and effectiveness of the compromise agreement.

Counsel for the executrix devote most of their brief to the question whether the action of Virginia Halasz, in renouncing her rights under the testamentary trust, is invalid by reason of the spendthrift clause. Counsel argue that the proper court may, under appropriate circumstances, approve a valid compromise agreement in which the beneficiary of a spendthrift testamentary trust releases her rights in the trust as part of an over-all settlement of the will contest and in consideration of other payments made to her or for her benefit. This may be done, they say, when there is a genuine will contest pending; when the payment is made to one who is properly contesting the validity of the will; when the payment to the contestant (and

the contestant's reciprocal surrender of her interest in the spendthrift trust) is reasonably necessary in order to protect the interests of the other beneficiaries in the will, which might be lost in the event that the will was wholly upset; and when the settlement appears by its terms to be fair and equitable.

I agree with counsel that under the conditions enumerated by them, such a settlement may be legally approved. That the conditions are present in the case at bar is evident from the journal entry in the court of common pleas in the will contest.

Had Virginia Halasz won her will contest, there would have been no will at all, and consequently no spendthrift trust for the protection of any of the beneficiaries. A holding that there can be no valid settlement merely because the contestant gives up her rights under a spendthrift trust and therefore is not subject to its restrictions, would be wholly illogical and would make a settlement in such cases well-nigh impossible.

The authorities recognize that under proper conditions, a proposed settlement will be approved by the court even though a spendthrift trust is affected. See Griswold, Spendthrift Trusts, Sections 377.1, 522 (2d ed. 1947); 3 Scott, Trusts, Section 337.6 (2d ed. 1956); 2 Restatement of Trusts 2d, Section 337 (o) (1959); 57 American Jurisprudence, Wills, Section 1011 (1948). As stated by Professor Scott, however, the court will approve such an agreement only if it is reasonably necessary for the protection of the interests of the beneficiaries. 3 Scott, Trusts, Section 337.6, pp. 2466-2467 (2d ed. 1956). It was necessary here, as determined by the court of common pleas.

The situation in the present case is to be distinguished from that in *Madden, Exr.,* v. *Shallenberger, Gdn.* (1929), 121 Ohio St. 401, and similar cases. In the *Madden case,* the settlement agreement not only provided for payments to the contesting heirs, which the Supreme Court of Ohio upheld, but it also modified the trust as to the other beneficiaries by eliminating the spendthrift clause and other restrictions. This part of the agreement was disapproved by the court.

As stated by Professor Scott, in discussing the *Madden* and similar cases, the beneficiaries "used the device of a compromise not merely for the purpose of protecting their interests from the attack of the contesting heirs, but also for the purpose of

relieving those interests from the restrictions imposed for their benefit by the testator." 3 Scott, Trusts, Section 337.6, p. 2468 (2d ed. 1956).

In the matter before us, the compromise agreement does not affect the spendthrift clause in so far as the beneficiaries other than Virginia Halasz, the contestant, are concerned, and the agreement is valid even though it removes the contestant from the trust restrictions.

Even apart from a settlement agreement, the beneficiary of a spendthrift trust, prior to the acceptance of benefits thereunder, may renounce or disclaim her interest therein. 1 Restatement of Trusts 2d, Section 36 (c) (1959); Griswold, Spendthrift Trusts, Section 524 (2d ed. 1947); Bogert, Trusts and Trustees, Section 226, p. 700 (2d ed. 1965); 3 Scott, Trusts, Section 337.7 (2d ed. 1956).

As observed by Professor Bogert:

"The law does not permit a property owner to force an interest on another against his will." Bogert, Trusts and Trustees, Section 170, p. 160 (2d ed. 1965).

The settlement agreement and renunciation being valid, we are now asked to direct the trustee to proceed with the administration of the trust without reference to the provisions of Item IV, A, 2(a) and Item IV, B, 1, for distribution of income to Virginia Halasz, as if she had died before Samuel Eells and Agnes Nisbett Eells. Actually, Item IV, B, 1, is inapplicable anyhow, because it is based upon the death of Agnes N. Eells before the testator's death.

It will be recalled that by Item IV, A, 2(a), after the death of testator's wife, if Virginia Halasz is then living, a separate trust equal to forty per cent of the trust estate is to be set aside for her, from which she is to receive the income during her life. Upon her death, the trustee is to distribute the trust estate in accordance with Item IV, A, 2(b).

Item IV, A, 2(b) stipulates that the balance of the trust estate (over and above the forty per cent), or all of it if Virginia does not survive the testator's wife, shall be distributed in equal shares to testator's son, Samuel Eells, Jr., and his daughter, Marion N. Eells, now Marion Scragg. If either Samuel Eells, Jr., or Marion Scragg is not then living, the share of the

deceased child goes to his or her children then living, in equal shares, and if such deceased child is not survived by any then living children, his or her share is to be added to the share of the other child. There are special provisions for any beneficiary under twenty-one, but these do not now concern us.

Virginia having renounced, must trust property equal to forty per cent of the trust estate nevertheless be set aside, and distribution thereof postponed until Virginia's death? Or may the whole trust estate be distributed upon the death of Agnes Eells?

It is evident that this question involves the doctrine of acceleration of remainders. The general rule with respect to acceleration, omitting those portions not pertinent to this case, is well stated in the Restatement of Property:

"When an attempted prior interest fails because the person to whom it is limited renounces it, succeeding interests are accelerated except when

(a) the terms and circumstances of the limitation manifest a contrary intent (see Sections 232 and 233) * * *" 2 Restatement, Property, Section 231 (1936).

In *Comment a* of Section 231, giving the rationale of the rule, it is stated that acceleration is in accordance with what is normally to be inferred as the intent of the "conveyor" (here the testator), namely, that as each successive interest sought to be created by him ends or becomes impossible, the next in order should move up. See also, 5 American Law of Property, Section 21.43 (1952); 6 Bowe-Parker, Page on Wills, Section 49.12, p. 57 (1962); 20 Ohio Jurisprudence 2d, Estates, Section 155 (1956); Folkerth, Acceleration of Future Interest in Ohio, 3 Ohio St. L. J. 171 (1937); 9 Univ. of Cincinnati L. Rev. 520 (1935). As explained by Professor Scott:

"* * * In such a case the inference is that the only reason for postponing the enjoyment of B's interest was to take care of A; and if A is out of the picture, B becomes immediately entitled to the trust property." 4 Scott, Trusts, Section 412.1 (2d ed. 1956).

It is apparent from Item IV, A of the will that the testator's only reason for postponing distribution of forty per cent of the trust estate was "to take care of" his daughter, Virginia. Other-

wise, he would not have directed distribution of the other sixty per cent upon the death of Agnes Eells.

Under the terms of the will, Samuel Eells, Jr., and Marion Scragg had vested remainders subject to defeasance in case of the death of either of them prior to the termination of the life estates. 2 Restatement, Property, Section 157 (1936). In the event of such death, the deceased child's children would take his or her share. These latter are known as substitutionary remaindermen.

As to forty per cent of the trust estate, the question arises whether the contingent interests of these substitutionary remaindermen, which, except for the renunciation, would have lasted during the lives of both Agnes Eells and Virginia Halasz, can be cut off as of the date of death of Agnes Eells, in view of the renunciation. The answer is that they can be so cut off. I turn again to the Restatement:

"* * * The renunciation of such attempted prior interest prevents the period within which such substitution was intended to be possible from ever existing. The accelerated interest is not defeasible upon the subsequent occurrence of the designated event." 2 Restatement, Property, Section 231, Comment h (1936).

See also, Section 232, Comment c, and the following: 5 A. L. R. 460, 461; 164 A. L. R. 1297, 1298, 1303; *Keen* v. *Brooks* (1946), 186 Md. 543, 47 A. 2d 67; *Bennett* v. *Fidelity Union Trust Co.* (1938), 123 N. J. Eq. 198, 196 A. 375; *American National Bank* v. *Chapin* (1921), 130 Va. 1, 107 S. E. 636.

The above rule, which represents the great weight of authority, is based upon the presumed intention of the testator. There is nothing in the present case indicating a contrary intention. Indeed, it would be highly unrealistic to conclude that after the death of Agnes Eells, the testator would wish forty per cent of the vested remainder bequeathed to his children to be unaccelerated or subject to defeasance in case of the death of one or both of them during the life of Virginia Halasz. Clearly, we should treat this whole matter as though Virginia Halasz had predeceased Agnes Eells.

The Supreme Court of Ohio has adopted the acceleration principle in renunciation cases, at least where the remainder is

vested. See, for example, *Holdren, Admr.*, v. *Holdren* (1908), 78 Ohio St. 276; *Davidson* v. *Miners & Mech. Sav. & Tr. Co.* (1935), 129 Ohio St. 418; *Crabbe, Admr.*, v. *Lingo* (1946), 146 Ohio St. 489. Where, however, a legacy was payable upon the death of the life tenant to a named legatee "should he then be living," the court refused to accelerate, holding that the express condition that the legatee be alive at the time of the life tenant's death could not be ignored. *Stevens, Exr.*, v. *Stevens* (1929), 121 Ohio St. 490. Whether or not the decision is correct need not be discussed, for in the present case we are not dealing with a remainder subject to a condition precedent, but rather with a remainder vested subject to defeasance. On the condition precedent situation, see 2 Restatement, Property, Section 233; Folkerth, Acceleration of Future Interests in Ohio, 3 Ohio St. L. J. 171, at 172; 9 Univ. of Cincinnati L. Rev. 520; 5 A. L. R. 473; 164 A. L. R. 1297, at 1306; 164 A. L. R. 1433, at 1435. In some of the above materials, the *Stevens case* has been questioned.

We must also distinguish the present case from those where a "distortion" occurs. To quote Professor Folkerth:

"By distortion is meant an upsetting of the testator's scheme of disposition in a manner which affects interests created by the will other than the renounced interest and the future interest which followed the renounced interest." Folkerth, Acceleration of Future Interests in Ohio, 3 Ohio St. L. J. 171 and 178 et seq.

See also, 2 Restatement, Property, Sections 234, 235; 20 Ohio Jurisprudence 2d, Estates, Section 157; *Holdren, Admr.*, v. *Holdren* (1908), 78 Ohio St. 276; *Trustees of Kenyon College* v. *Cleveland Trust Co.* (1935), 130 Ohio St. 107.

Where there is a substantial "distortion," the court will order a sequestration, and will distribute the estate in such a manner as to effectuate as nearly as possible the intent manifested by the testator.

It is obvious that under the definition given above, there is no distortion in the instant case, for only the life interests and the vested remainders are involved.

In cases where the renunciation stems from an election by the surviving spouse, the Ohio Legislature has spoken. Section

2107.39, Revised Code. But the statute does not apply to the case before us, where the renunciation is by a daughter.

There appear to be no Supreme Court cases involving the "substitutionary beneficiary" situation. But there are lower court cases substantially in point and consistent with the "acceleration-no defeasance" rule stated in Section 231, Comment h, of the Restatement of Property, previously quoted. *Dymond, Exr.*, v. *Dymond* (Com. Pl. 1912), 12 Ohio N. P. (N. S.) 506, 22 Ohio Dec. 563; *Blocher* v. *Trick* (1917), 8 Ohio App. 222 (holding erroneously, however, that upon acceleration, the trust estate passed as "intestate" property); *Funkhouser* v. *Dorfmeier* (Prob. 1963), 95 Ohio Law Abs. 140 (decided under Section 2107.39, Revised Code, but containing a pronouncement that the decision would be the same without the statute). The *Dymond* and *Blocher cases* are discussed in Folkerth, Acceleration of Future Interests in Ohio, 3 Ohio St. L. J. 171 (1937). Contrary to these decisions is *Maier* v. *Wyandt, Gdn.* (1945), 78 Ohio App. 33, refusing acceleration and holding that if acceleration were allowed, the substitutionary remaindermen might never come into possession of their respective contingent estates even though the contingencies happened before the death of the life tenant. The case is criticized in 32 Iowa Law Review 590 (1947).

There being no binding precedent, I am free to decide the question as I think proper, and, as already indicated, my decision is that the remainders limited upon the death of Virginia Halasz, will be accelerated to the time of the death of Agnes Eells, and that the vested estates coming into possession and enjoyment at that time will not be subject to defeasance.

In order to avoid misunderstanding, it should be noted that Sections 2131.05 and 2131.06, Revised Code, dealing with the indestructibility of contingent remainders, are not applicable. Those statutes, and similar statutes in many other states, concern such indestructibility where the prior interest ends after having been in existence for some period of time. They do not cover a situation like the present one, where the prior interest, *i. e.*, the life interest of Virginia Halasz, is ineffective in its inception, due to the renunciation. 2 Restatement, Property 1011. And see the whole of Chapter 17 of that volume, listing the statutes at page 1032.

## Conclusion of Law

Upon the death of Agnes N. Eells, even though Virginia Halasz be still alive, the whole trust estate shall be distributed in accordance with Item IV, A, 2(b), as though Virginia Halasz had predeceased Agnes N. Eells, subject, of course, to the provisions in favor of any distributee who at the time of said distribution has not attained the age of twenty-one years.

*Judgment accordingly.*