James R. WARREN, Trustee, Plaintiff,

v.

G.M. SCOTT & SONS, Edward Dale Phillips, Defendants.

In the Matter of Edward Dale PHILLIPS, Debtor.

Adv. No. 3–83–0282.
Bankruptcy No. 3–82–03019.

United States Bankruptcy Court, S.D. Ohio, W.D.

Nov. 7, 1983.

James R. Warren, Springfield, Ohio, trustee/plaintiff.

Daniel G. Hale, Columbus, Ohio, for defendant Scott & Sons Co.

Samuel L. Calig, Columbus, Ohio, for defendant/debtor.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

Presently before the court is plaintiff-trustee's motion for turnover of property, which was filed on April 20, 1983. The property claimed by the plaintiff-trustee is the defendant-debtor's interest in a profit sharing pension plan with his defendant-employer, O.M. Scott & Sons [Scott].

On October 25, 1982, Edward Dale Phillips, filed for bankruptcy. On that date, he had an interest in a profit sharing pension plan.[1] This interest was not initially listed as an asset, but was later added by amendment on December 17, 1982, when he claimed this property as exempt under Ohio Rev.Code § 2329.66(A)(10) and (A)(17) the Ohio Exemption Statute. The trustee timely objected to this claim and filed this action.

As of June 30, 1982, Phillips' interest in the plan was $3,738.54; as of October 25, 1982 (the date he filed bankruptcy), the interest was approximately $4,799.96.

Scott states that the plan qualified under the Employee Retirement Income Security Act of 1974, [ERISA] 29 U.S.C. §§ 1001 et seq. The Trustee has neither contested this fact nor offered any contrary evidence. For the purposes of this action, I assume that the plan is so qualified and is thus subject to ERISA's anti-alienation provisions.[2]

The trustee here generally claims that the plan is property of the estate, neither subject to exclusion nor exemption. Moreover, he states, that the overall rationale of the Bankruptcy Law never intended a debtor to be able to accumulate funds in such a fund, then have them either excluded or exempted and finally to "walk off with a substantial amount of funds free and clear of his debts."

Scott claims that this pension plan is excluded from the estate per 11 U.S.C. § 541(c) or, alternatively, that, if included in the estate, it is exempted under either the Ohio Exemption Statute or the Federal law exemption found in 11 U.S.C. § 522(b)(2)(A).

■ Generally, with the expanded reach of 11 U.S.C. § 541(a)(1), the bankruptcy estate includes all the debtor's legal and equitable interest in properties. As the leg-islative history clearly indicates, the scope of this section is very broad, so broad in fact that it includes even property needed for the debtor's fresh start, which can later be exempted. *Matter of Goff,* 706 F.2d 574, 578 n. 10 (5th Cir.1983).

■ While generally broad, the definition of property of the estate was specifically restricted by Congress in 11 U.S.C. § 541(c)(2):

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under application non-bankruptcy law is enforceable in a case under this title.

According to the language of this section, if the alienation restrictions in Phillips' ERISA pension plan are enforceable against general creditors under nonbankruptcy law, then they are enforceable against the bankruptcy trustee and not included in the estate. I am satisfied that these restrictions are enforceable.

In finding that the alienation restrictions are enforceable against other creditors and thus excluding the ERISA plan from Phillips' estate, I agree with the district judge in *In re Threewitt,* 24 B.R. 927, 929 (D.C.D. Kan.1982):

The great weight of authority is to the effect that a debtor's interest in an ERISA pension fund is beyond the reach of his general creditors. [Citations omitted.] ... [T]his Court is persuaded that Congress intended that general creditors not reach a debtor's interest in an ERISA pension fund, and intended to preempt any state law to the contrary. It accordingly follows, by virtue of Section 541(c)(2), that the bankruptcy trustee may not reach Mr. Threewitt's interest in the Plan.

*See, e.g. In re Rogers,* 24 B.R. 181 (Bkrtcy. D.Ariz.1982); *but see Goff, supra.*

---

1. This plan specifically included a spendthrift clause, stating that "the right of any Participant ... to any benefit ... shall not be subject to alienation or assignment, or to attachment, execution, garnishment, sequestration or other legal or equitable process."

2. Congress has committed the determination of qualification to the Commissioner of the Internal Revenue Service, and it would therefore be inappropriate for me to pass upon this question since it is not before me. *In re Baviello,* 12 B.R. 412, 416 n. 5 (Bkrtcy.E.D.N.Y.1981).

In *GMC v. Buha,* 623 F.2d 455 (6th Cir. 1980), [the current Chief] Circuit Judge Pierce Lively held that benefits under an ERISA pension plan were not subject to garnishment in a Michigan state court by a creditor of a plan beneficiary. (The only exception noted at 461 was for family support and maintenance). Crucial to Judge Lively's analysis was the following *legislative,* as opposed to *interpretive,* Internal Revenue Service regulation:

(b) *No assignment or alienation.—*(1) *General rule.* Under section 401(a)(13), a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process.

26 C.F.R. § 1.401(a)–13 (1979). *See also, Tenneco Inc. v. First Virginia Bank,* 698 F.2d 688 (4th Cir.1983); *Commercial Mortgage Ins. Inc. v. Citizens Nat. Bank,* 526 F.Supp. 510 (N.D.Tex.1981); *In re Holt,* 32 B.R. 767, 10 B.C.D. 1267 (Bkrtcy.E.D.Tenn. 1983).

Other courts have held that 11 U.S.C. § 541(c)(2) applies only to traditional spendthrift trusts because the legislative history states that the section preserves restrictions on the transfer of a spendthrift trust. [H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 369 (1977), S.Rep. No. 95–989, 95th Cong., 2d Sess. 83 (1978)]. U.S.Code Cong. & Admin.News 1978, p. 5787. *See Matter of Ross,* 18 B.R. 364 (D.C.N.Y.1982); *In re Graham,* 24 B.R. 305 (Bkrtcy., N.D.Iowa W.D.1982). This Court does not agree with this narrow interpretation of Section 541(c)(2). The language of Section 541(c)(2) is clear on its face and does not limit itself to spendthrift trusts. When a statute is clear on its face there is no end to resort to legislative history. (*United States v. Oregon,*

366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961), *reh'g denied,* 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70 (1961); *Universal City Studios v. Sony Corp. of America,* 659 F.2d 963 (9th Cir.1981).

*In re Pruitt,* 30 B.R. 330, 331 (Bkrtcy.D. Colo.1983).

One of the leading cases espousing the contrary narrow view, that § 541(c)(2) applies only to traditional spendthrift trusts, is *Goff, supra. Goff* can be readily distinguished. The *Goff* court held that a *self-settled* Keough plan was not a spendthrift trust and thus was includable in the debtor's estate, while state law-determined spendthrift trusts would be excludable. Critical in the court's analysis was the *self-settled* nature of the *Goff* plan, as seen at 589 where the court contrasts self-settled plans with "the employer-created-and-controlled nature of [other ERISA] plans [which] may well make them analogous to a spendthrift trust," and thus excludable.[3]

Not only is my position that it is not part of the debtor's estate supported by the clear language of the statute, but also by public policy.

Congress enacted ERISA after finding that the national interest was involved, that the security of millions of employees and their dependents was affected by employee benefit plans, and that uniformity of the law, including minimum standards, was required.

The public policy underlying the requirement of anti-alienation clauses in ERISA plans has been stated as follows:

The purpose of the proscription on alienation is to protect an employee from his own financial improvidence in dealings with third parties. The provision is not intended to alter traditional support obligations but rather to assure that the employee and his beneficiaries reap the ultimate benefits due upon retirement.

---

**3.** It is interesting to note that *Goff* at 583 and 585 cites only one case in which an ERISA plan had been included in the estate, i.e. *In re Graham,* 24 B.R. 305 (Bkrtcy.N.D.Iowa 1982). *Graham,* in turn, relies heavily on the analysis in *In re Threewitt,* 20 B.R. 434 (Bkrtcy.D.Kan.

1982). This *Threewitt* decision was subsequently overruled by the District Court in *In re Threewitt,* 24 B.R. 927 (D.Kan.1982). This only increases the confusion concerning this contrary position as effective precedent.

**546**

American Tel. & Tel. Co. v. Merry, 592 F.2d 118, 124 (2d Cir.1979).

This public policy prevailed in keeping such ERISA plans out of the bankrupt's estate under the Bankruptcy Act of 1898.

> Under section 70a of the Bankruptcy Act, pension plan funds were viewed as a wage substitute for some future period and, therefore, were not included within the property of the estate. *In re Turpin,* 644 F.2d 472 (5th Cir.1981); *In re Parker,* 473 F.Supp. 746 (W.D.N.Y.1979). Plans from which the debtor had an unrestricted right to withdraw funds prior to retirement were the exception to the rule and were included with the property of the estate. See *In re Witlin,* 640 F.2d 661 (5th Cir.1981) (Keogh plan was property of the estate) *In re Maco,* 4 B.C.D. 94 (D.C.Or.1978) (IRA plan was property of the estate); *In re Wilson,* 3 B.C.D. 844 (Bankr.Ct.N.D.Tex.1977) (same).

*In re Hinshaw,* 23 B.R. 233, 234 (Bkrtcy.D. Kan.1982).

The entire profit sharing pension plan agreement was not introduced into evidence. The evidence as submitted does not completely negate any presently vested interest in the debtor as to the retirement plan *instanter.* Based upon the arguments of counsel for the parties and the portion of the plan introduced (Article XII) it must be assumed that the debtor has no power of immediate and unrestricted withdrawal of any contributions made by him, by termination of employment or otherwise, distinguishing the decision of this court *In the Matter of Brown,* 2 B.C.D. 1661 (1976).

Having held that such plans are not includable in the debtor's estate pursuant to the provisions of § 541(c)(2), I note that under Ohio law such plans might be considered as spendthrift trusts and as such would also be excludable or exemptible. The court in *Central Nat. Bank of Cleveland v. Eels,* 5 Ohio Misc. 187, 22 Ohio Op.2d 418, 215 N.E.2d 77 (Probate Court 1965) dealt with a will containing a spendthrift clause.

This is defined in the Restatement of Trusts 2d, Section 152(2) (1959), as follows:

> "A trust in which by the terms of the trust or by statute a valid restraint on the voluntary and involuntary transfer of the interest of the beneficiary is imposed is a spendthrift trust."

> See also 2 Scott, Trusts, Section 150 (2d ed. 1956; Griswold, Spendthrift Trusts, Section 421, p. 490 (2d ed. 1947).

*Id.,* 215 N.E.2d at 79.

In the present case before the court, both the terms of the trust and the statute (ERISA) impose valid restraints, thus seeming to qualify Phillips' plan as a spendthrift trust eligible for exclusion or exemption from the debtor's estate.[4]

In accordance with the above opinion,

IT IS HEREBY ORDERED that the complaint for turnover of property be dismissed.

---

4. Judge Speer in *In re Everhart,* 11 B.R. 770 (Bkrtcy.N.D.Ohio 1981) held that a similar profit sharing ERISA plan was exempt per Ohio law.