OPINION
Before POOLE, REINHARDT, Circuit Judges, and HAUR,* District Judge.
HAUR, Senior District Judge:
Appellant (debtor in the bankruptcy proceeding) is a physician employed by his own professional medical corporation, the Howard Douglas Daniel, M.D., Professional Corporation, and is the sole director and shareholder of said corporation. Appellees are creditors who successfully objected to debtor’s claim of exemption, denied by Bankruptcy Court Order which was affirmed on appeal to the District Court.
JURISDICTION AND STANDARD OF REVIEW:
All parties agree that the District Court had Federal subject matter jurisdiction under former 28 U.S.C. 1471, now 28 U.S.C. § 1334; that we have jurisdiction under 28 U.S.C. § 1291 and 28 U.S.C. § 158(d); that the orders of the two lower courts (Bankruptcy and District) are “final” and appeal-able under In re Mason, 709 F.2d 1313, 1317 (9th Cir.1983); and that the appeal is timely.
The applicable standard of review in a bankruptcy appeal was set forth by this Court in In re American Mariner Industries, Inc., 734 F.2d 426, 429 (9th Cir.1984), as follows:
This court reviews the bankruptcy court’s findings of fact by the clearly erroneous standard of F.R.Civ.P. 52(a). In re Comer, 723 F.2d 737, 739 (9th Cir.1984). But the bankruptcy court’s conclusions of law are subject to de novo review.
The general rule applied by this Circuit in the past was that interpretations of state law by a District Judge were entitled to deference and the District Court’s determination was accepted on review unless shown to be “clearly wrong.” Clark v. Musick, 623 F.2d 89, 91 (9th Cir.1980). However, last year in an en banc opinion, this Court adopted a new rule that “questions of state law are reviewable under the same independent de novo standard as are questions of Federal law.” Matter of McLinn, 739 F.2d 1395, 1397 (9th Cir.1984). It is under this independent de novo standard that we have reviewed the District Court’s decision and affirm it for the reasons now set forth.
FACTS:
In 1971, debtor’s corporation formed a pension and profit-sharing plan which was managed and controlled by the debtor. The debtor was one of four beneficiaries of the plan. Section 8.05 of the debtor’s plan contained the standard anti-alienation, anti-assignment clause required by ERISA, 29 U.S.C. § 1056(d)(1), and the Internal Reve *1354 nue Code, 26 U.S.C. § 401(a)(13), in order to qualify the plan as tax exempt. The plan was approved as “qualified” by the Internal Revenue Service on March 25, 1971.
The plan gave the debtor great latitude in withdrawing his beneficial interest, which became 100% vested and non-forfeitable after five years of employment. The plan provided that in the event of termination of the debtor’s employment with the corporation, he would be entitled to payment of his accrued beneficial interest. The plan was also subject to amendment or discontinuance at will by the employer (i.e., the debtor). Finally, the debtor was entitled to “borrow” against his interest on an unsecured basis with virtually no constraints on repayment.
Between 1971 and 1982, the corporation made total contributions to the plan in the sum of $128,318.00, with fiscal year end amounts as follows:
Date of Plan Contribution Fiscal Year Ending Amount
3/15/71 3/31/71 $ 8,720.00
3/20/72 3/31/72 10,000.00
3/18/73 3/31/73 10,000.00
2/14/74 3/31/74 500.00
N/A 3/31/75 0.00
3/1/76 3/31/76 100.00
3/21/77 3/31/77 15.360.00
3/31/78 3/31/78 15.000. 00
3/30/79 3/28/80 3/31/79 3/31/80 2,000.00 20.000. 00
3/30/81 3/31/81 23,000.00
3/29/82 3/31/82 23.638.00
On May 20, 1981,[1] the debtor borrowed $75,000 from the plan to buy a house, agreeing to repay the loan in one year with 10% annual interest. The loan represented most of the debtor’s interest in the plan and was not secured except by the debtor’s interest in the plan. The plan was not given a deed of trust to the property and was not named as an insured on the homeowner’s insurance policy. The debtor borrowed from the plan on these terms without attempting to inquire whether, or on what terms, he could have financed his residence through a bank or savings and loan institution.
On August 4, 1981, the debtor amended the terms of the plan making himself the sole trustee. The corporation applied to the I.R.S. for approval of the amended plan and on May 10, 1982, the approval was issued.
When the $75,000 loan became due on May 20, 1982, the debtor rolled it over, giving the plan a new promissory note payable to himself, as trustee. The note bore a 12.5% annual interest and was payable “interest only in annual installments commencing May 20, 1983.” No repayment of principal was due until May 20, 1987. Apparently no interest payments were ever made on the note.
On September 30, 1982, approximately two weeks before filing a petition in bankruptcy, the debtor caused his corporation to contribute a total of $39,000 to the plan, representing all the corporation’s available cash.
The September 30, 1982 contribution, although within the I.R.S. guidelines, differed from earlier contributions in that it totalled nearly twice the largest contribution for any previous year. Even though all previous contributions had been made close to the end of each fiscal year (March 31st) and had been based on the corporation’s profits, the September 30th, 1982 contribution was made in the middle of the fiscal year, long before any profit or loss could be ascertained, and was therefore not based on any profit calculation.
Debtor’s vested interest in the pension plan is now approximately $98,000.00 out of a total plan fund of $179,144.00.
PROCEEDINGS BELOW:
On October 12, 1982, debtor/appellant filed his petition for relief under Chapter 7 of the Bankruptcy Code of 1978 in the United States Bankruptcy Court for the Northern District of California.
*1355 Under the debtor protection provisions of the Bankruptcy Code, an individual who files a petition for relief is entitled to a number of “exemptions” whereby certain of his assets are excluded from bankruptcy administration and distribution to his creditors. 11 U.S.C. § 522.
Section 522(b)[2] of the Code is structured to give the debtor an election or choice to exempt either the particular bankruptcy law assets specified by 11 U.S.C. § 522(d)[3], as directed by § 522(b)(1);[4] or those assets specified as exempt under the provisions of the debtor’s local state law or under Federal non-bankruptcy law, as directed by § 522(b)(2)(A).[5] Debtor elected to claim his vested interest in the pension and profit-sharing plan as exempt under then existing California law, former California Code of Civil Procedure § 690.18(d) [former C.C.P. § 690.18(d) ][6], pursuant to 11 U.S.C. § 522(b)(2)(A).
On December 8, 1982, pursuant to Bankruptcy Rule 4003, debtor/appellant’s creditors, Security Pacific National Bank, Commercial Bank of San Francisco, Leasco Capital Corporation and Capital Reserve Leasing Corporation, filed an “Objection To Debtor’s Claim of Exemption” with respect to the debtor’s interest in the pension and profit-sharing plan. Two days of hearings on the objection to the claim of exemption were held before the Honorable Robert L. Hughes, United States Bankruptcy Judge. *1356 Having elected the state law exemption under Section 522(b)(2)(A) of the Bankruptcy Code, which also permits use of certain Federal non-bankruptcy exemptions, the debtor advanced both state law and Federal non-bankruptcy law arguments before the Bankruptcy Court.
On January 24, 1984, Judge Hughes entered an “Order Sustaining The Objection to The Claim of Exemption”. The Bankruptcy Court held that Dr. Daniel’s interest in the plan was not exempt under former C.C.P. § 690.18(d) because the debtor had not principally used the plan for retirement purposes. The effect of the Bankruptcy Court’s order was to deny the claim of exemption for debtor’s vested interest in the pension and profit-sharing plan and to require debtor to turn over his interest in the retirement plan to his trustee in bankruptcy for distribution to his creditors. Notice of Entry of the Order was filed on January 27, 1984. On the same day, appellant Daniel filed a timely Notice of Appeal to the District Court for the Northern District of California pursuant to Bankruptcy Rule 8002.
On July 27, 1984, the District Court entered its Memorandum Decision and Order, which affirmed the Bankruptcy Court’s findings and conclusions on both Federal and state law grounds.
The District Court agreed that the debt- or’s self-interested handling of the plan defeated any exemption under California law and, in addition, concluded that Congress did not intend to include ERISA or Internal Revenue Code qualified pension plans as Federal non-bankruptcy exemptions under 11 U.S.C. § 522(b)(2)(A).
DISCUSSION:
I. DEBTOR’S PENSION AND PROFIT-SHARING PLAN WAS NOT EXEMPT UNDER CALIFORNIA STATE LAW.
A. The Lower Courts Properly Held That Under Former C.C.P. § 690.-18(d), The Debtor’s Plan Was Exempt Only If “Used For Retirement Purposes.”
In his brief, debtor/appellant argues for a broad construction of former C.C.P. § 690.18(d) in favor of the debtor. Appellant argues that under a liberal interpretation of the California statute “any private retirement plan” would be exempt from inclusion in the bankruptcy estate. Appellant contends that the language of this statute first sets forth an alleged unlimited exemption for any retirement plan and that the use of the phrase “including, but not limited to” after the broad exemption indicates that the rest of the plans described after those words are simply examples of some of the types of plans that qualify for exemption.
However, a careful analysis of former C.C.P. § 690.18(d), in effect on the date of the debtor’s petition, does not lead to any such interpretation. Instead, it is clear that the then existing California statutory exemption applied to (1) money held, controlled or in the process of distribution by (a) any private retirement plan, including but not limited to union retirement plans or (b) any profit-sharing plan designed and used for retirement purposes; (2) the payment of benefits as an annuity, pension, allowance, disability payment or death benefit from (a) such retirement or (b) such profit-sharing plan; and to (3) all contributions and interest returned to any member of (a) any such retirement or (b) any such profit-sharing plan. Essentially, former C.C.P. § 690.18(d) covered two different types of plans — “retirement plans” and “profit sharing plans;” however, plans of the latter type were exempted only if designed and used for retirement purposes.
Under the explicit language of the California statute, a “profit-sharing plan designed and used for retirement purposes” is not a sub-species of “any retirement plan”, but is its own separate and distinct type of plan. Indeed, the new
*1357 structure of new C.C.P. § 704.115,[7] which is the recodification of former C.C.P. § 690.18(d), explicitly supports this interpretation. See C.C.P. § 704.115(a)(1) and (a)(2). Therefore, a profit-sharing plan, in order to qualify for an exemption, must be “designed and used for retirement purposes.” [Emphasis added.]
B. The Subject Profit-Sharing Plan Was Not “Used For Retirement Purposes.”
The debtor has conceded since the start of the litigation that the plan is a profit-sharing plan. As previously emphasized, in order to qualify for an exemption, the profit-sharing plan had to be “designed and used for retirement purposes.” Although the Bankruptcy Court and the District Court indicated that the plan may have been originally “designed” for retirement purposes, the basic issue there was, and here is, whether the plan was “used” for retirement purposes.
Two discrete transactions viewed together led the Bankruptcy and District Judges to conclude that the debtor did not “use” ,the plan principally for retirement purposes. First in May, 1981 the debtor, acting as trustee of the plan, made a $75,000 unsecured loan to himself so that he could purchase a home. While this transaction did not violate any federal tax provisions or ERISA requirements, the debtor did not establish his ability to obtain funds commercially on as favorable a basis and therefore did not establish that the loan benefited the plan’s retirement purpose.
Although debtor argues that the plan benefited from the interest on the loan, nevertheless, the unsecured nature of the loan at a favorable interest rate, the fact that the loan amount was substantially equal to the debtor’s interest in the plan, and the fact that the debtor rolled over his repayment to the plan — all certainly support the inference that the transaction was more a withdrawal than a loan, thereby negating a retirement “use” purpose. If debtor’s real concern had been retirement, rather than buying a residence with pre-tax dollars, he would surely have invested the funds in assets which would yield a competitive money market return, would provide adequate security, and would preserve and enhance the capital of the plan.
Second, the transfer of $39,000 from the corporation to the plan on the eve of bankruptcy further demonstrates that the debt- or’s use of the plan was not for retirement purposes. The plan provided for deposits, at the employer’s discretion, at year-end based on profit calculations. Although earlier deposits may have complied with these plan provisions, this final contribution was made at mid-year and in the absence of any profit calculations.
Debtor contends that the $39,000 which was transferred to the plan was a corporate asset which would not have been otherwise available to the creditors. However, since the transfer of all of the corporation’s available cash lowered the value of the corporation’s stock, which was an asset of the bankruptcy estate available to creditors, the plan was used to shield and hide debtor’s assets from his creditors.
*1358 The fact that the pre-bankruptcy contribution of $39,000 was not fraudulent and not violative of ERISA or the Internal Revenue Code does not dispose of the question of whether the plan was used for retirement purposes. While it is well recognized that a debtor may convert non-exempt property to exempt property on the eve of bankruptcy, Love v. Minick, 341 F.2d 680 (9th Cir.1965), the shielding and hiding of assets from creditors is clearly not a “use for retirement purposes.”
Thus, the plan essentially operated to meet debtor’s short-term personal needs by lending money or shielding and hiding funds from creditors. Moreover, the debt- or has failed to show how his transactions with the plan, by virtue of his role as trustee, were in furtherance of legitimate long-term retirement purposes.
In light of the evidence, the lower courts were amply justified in finding that the debtor’s plan was not principally “used for retirement purposes,” as required by former C.C.P. § 690.18(d).[8]
C. The Plan Is Not An “Account” Subject To Exemption Under Former C.C.P. § 690.18(d).
Appellant argues that the second sentence of former C.C.P. § 690.18(d)[9] created an exemption for any “account” provided for in the Internal Revenue Code. Appellant further contends that since his pension and profit-sharing plan was established under § 401 of the Internal Revenue Code of 1954 as amended by § 1056 of the Employee Retirement Income Security Act of 1974 and since the amount in the fund did not exceed the maximum amount exempt from federal income taxation, the plan was exempt from execution under former C.C.P. § 690.18(d).
However, it is clear that the phrase “individual retirement” modifies “accounts” as well as “annuities”. Thus the statute does not exempt all “accounts ... provided for in the Internal Revenue Code”, but only that kind of individual retirement account commonly known as an IRA.
The debtor’s interest in the plan cannot be an IRA. The plan was established by the debtor’s corporation under IRC § 401(a), while an IRA, by contrast, must be established pursuant to IRC § 219. See 26 U.S.C. § 219. Moreover, section 219(b)(2)(A)®[10] specifically forbids an IRA deduction by one who, like the debtor here, is “an active participant in ..... [a] plan described in section 401(a).”
It follows then, that since appellant’s interest in the corporate plan was not an IRA, it did not qualify for exemption under the second sentence of former California C.C.P. § 690.18(d).[11]
II. THE DEBTOR’S PENSION AND PROFIT SHARING PLAN WAS NOT EXEMPT FROM THE BANKRUPTCY ESTATE UNDER FEDERAL NON-BANKRUPTCY LAW.
Appellant/debtor argues that the anti-alienation, anti-assignment prohibitions in 29 U.S.C. § 1056(d)(1)[12] [ERISA] and 26 U.S.C. § 401(a)(13)[13] [Internal Revenue *1359 Code], which are incorporated into his pension and profit sharing plan, create federal non-bankruptcy exemptions under 11 U.S.C. § 522(b)(2)(A),[14]. In addition, by citing certain cases from Bankruptcy Courts[15], appellant apparently contends, for the first time in this appeal, that the ERISA and IRC anti-assignment and anti-alienation provisions included in the plan provide the basis for the plan’s exclusion from the bankruptcy estate under 11 U.S.C. § 541(c)(2)[16], which protects property subject to restrictions on alienation which are enforceable under “applicable non-bankruptcy law. ”
In the Matter of Goff, 706 F.2d 574 (5th Cir.1983), upon which the District Court relied, the Fifth Circuit explicitly considered the types of exemptions and exclusions envisaged by both 11 U.S.C. § 522(b)(2)(A) and 11 U.S.C. § 541(c)(2). The Goff case makes it clear that Congress never intended for the ERISA and IRC anti-alienation provisions to create exemptions or exclusions for pension plans under either the federal non-bankruptcy exemption of 11 U.S.C. § 522(b)(2)(A) or the non-bankruptcy exclusions of 11 U.S.C. § 541(c)(2).
The reasoning and results in the Goff case have been followed by every other Circuit which has considered the issue of whether IRC or ERISA qualified plans are properly excluded or exempted under either 11 U.S.C. § 541(c)(2) or 11 U.S.C. § 522(b)(2)(A). See In re Graham, 726 F.2d 1268 (8th Cir.1984) and In re Lichstrahl, 750 F.2d 1488 (11th Cir.1985).
The Lichstrahl case, which is the most recent decision by a Circuit Court reviewing and approving the Goff and Graham holdings, contains an excellent and succinct discussion of the very issues raised by Appellant in this appeal. As in the present case, the debtor in Lichstrahl was a surgeon who was the sole director and stockholder of his professional medical corporation. His corporation created pension plans pursuant to 29 U.S.C. § 1001 et seq (1982) (ERISA) and 26 U.S.C. § 401 (IRC). The plans contained prohibitions on assignment or alienation of the beneficiaries’ interests. The Lichstrahl Court held that the plans were not properly excluded under 11 U.S.C. § 541(c)(2) and could not be exempted under 11 U.S.C. § 522(b)(2)(A). Id. at 1489.
Addressing the issue of Federal non-bankruptcy exclusions in view of the legislative history of 11 U.S.C. § 541(c)(2)[17], the Lichstrahl Court emphasized at 1489-1490:
*1360 Under § 541 of the Bankruptcy Code, all property in which a debtor has a legal or equitable interest at the time of bankruptcy comes into the estate. 11 U.S.C. § 541(a)(1) (1982). What constitutes a legal or equitable interest is broadly construed. One exception to the sweeping scope of § 541(a) is § 541(c)(2). It preserves restrictions on the transfer of a beneficial interest of the debtor in a trust which is enforceable under applicable nonbankruptcy law and thus prevents such an interest from inclusion in the property of the estate.
Relying primarily on legislative history, courts have generally interpretated the section’s reference to “applicable nonbankruptcy law” as applying only to state law concerning spendthrift trusts. See, e.g., Matter of Goff, 706 F.2d 574 (5th Cir.1983); see also In re Graham, 726 F.2d 1268 (8th Cir.1984); [further citations omitted]. But see In re Pruitt, 30 B.R. 330 (Bankr.D.Colo.1983). We too hold that “applicable nonbankruptcy law” refers only to state spendthrift trust law. Therefore, ERISA-qualifying pension plans containing anti-alienation provisions are excluded pursuant to section 541(c)(2) only if they are enforceable under state law as spendthrift trusts. See Matter of Goff, 706 F.2d 574 (5th Cir.1983) [Emphasis added and footnote omitted]
Thus, following the Goff, Graham and Lichstrahl cases, this court holds that the phrase “applicable non-bankruptcy law” in 11 U.S.C. § 541(c)(2) was intended to be a narrow reference to state “spendthrift trust” law and not a broad reference to all other laws, including ERISA and IRC, which prohibit alienation. Therefore, the ERISA and IRC anti-alienation provisions in debtors pension and profit sharing plan does not create a Federal non-bankruptcy exclusion under 11 U.S.C. § 541(c)(2).
The Lichstrahl court also focused its examination on whether IRC and ERISA approved plans could be exempted pursuant to 11 U.S.C. § 522 (1982). As concluded in Lichstrahl at 1491:
We agree with the Fifth Circuit that Congress did not intend to exempt such plans under this section. See Matter of Goff, 706 F.2d 574, 585 (5th Cir.1983); Matter of Turpin, 644 F.2d 472, 474 n. 1 (5th Cir.1981) (dicta).
The House and Senate reports on § 522(b)(2)(A) provide a list of property that can be exempted under federal laws.[18] ERISA-qualified pension plans are not included. Although Congress may not have intended the list to be exhaustive, the failure to include ERISA is nontheless indicative of congressional intent. Congress knew of the much-debated and comprehensive statute when it issued the House and Senate reports on § 522(b)(2)(A) in 1977 and 1978, and yet it did not include ERISA in those reports. *1361 Matter of Goff, 706 F.2d at 585; see also In re Graham, 726 F.2d 1268, 1274 (8th Cir.1984). Congress, however, did refer to ERISA in other sections of the Bankruptcy Court. Of particular importance is ERISA’s inclusion within the alternative federal exemptions listed in § 522(d). The failure to mention ERISA in connection with § 522(b) was intentional. Matter of Goff, 706 F.2d at 585.
Furthermore, excluding ERISA-qualified pension plans from the list of property exempted under federal law is consistent with an important distinction between exempted property and property covered by ERISA. Despite the similarity between the anti-alienation provisions of ERISA and some of the listed statutes, the “pensions, wages, benefits and payments included in the ... list are all peculiarly federal in nature, created by federal law or related to industries traditionally protected by the federal government. In sharp contrast, ERISA regulates private employer pension systems.” In re Graham, 726 F.2d at 1274. It is this “peculiarly federal nature” shared by the cited statutes that identifies and determines which federal statutes are to be included within the “other federal law” exemption of § 522 and which, like ERISA, are to be excluded. See Matter of Goff, 706 F.2d at 586. The failure to mention ERISA in the legislative history accompanying § 522(b)(2)(A) is, therefore, both purposeful and reasoned. [Footnote omitted]
Appellant’s reliance on the Ninth Circuit case of Franchise Tax Board v. Construction Laborers et al., 679 F.2d 1307 (9th Cir.1982), is misplaced since it was reversed by the Supreme Court.[19] Moreover, it dealt only with the power to garnish or levy against retirement benefits of a solvent debtor under state law and did not address the nature of federal exemptions in a Bankruptcy context. Similarly, appellant’s discussion of certain District and Appellate Court cases from other jurisdictions[20] is not on point since those cases likewise do not deal with Federal non-bankruptcy exemptions pursuant to 11 U.S.C. § 522(b)(2)(A).
Although there are a few Bankruptcy Court decisions outside this Circuit to the contrary, the holdings of our sister circuits in Goff, Graham, and Lichstrahl are controlling and should be adopted by this Circuit. Thus, pursuant to the solid weight of authority of Goff and its progeny, we hold that the anti-alienation provisions of ERI-SA and the Internal Revenue Code do not create Federal non-bankruptcy exemptions for ERISA qualified plans under 11 U.S.C. § 522(b)(2)(A).
AFFIRMED.

. Note that the debtor’s Statement of Affairs (Appellant’s Excerpts of Record on Appeal, p. 7), Appellee’s Brief (p. 3) and Appellant’s Brief (p. 13), list the date of the loan as May, 1981, while the Bankruptcy Court (Appellant's Excerpts of Record on Appeal p. 17) and District Court (Appellant’s Excerpts of Record on Appeal p. 29) refer to the loan date as May, 1980. We believe 1981 is the correct year.

. 11 U.S.C. § 522(b) provides in relevant part: (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either—
(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative, (2) (A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor’s domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; ...

. As to exemptions for pension and profit-sharing plans 11 U.S.C. § 522(d)(10)(E) provides, in pertinent part,
§ 522. Exemptions.
(d) The following property may be exempted under subsection (b)(1) of this section:
(10) The debtor’s right to receive—
(E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—
(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor’s rights under such plan or contract arose;
(ii) such payment is on account of age or length of service; and
(iii) such plan or contract does not qualify under section 401(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. § 401(a), 403(b), 408, or 409).

. See Footnote 2, 11 U.S.C. § 522(b)(1), for the exact language.

. See Footnote 2, 11 U.S.C. § 522(b)(2)(A), for the exact language.

. California Code of Civil Procedure § 690.-18(d), which was in effect at the time the debtor filed his petition for relief, provided:
(d) Except with regard to a judgment or order for child or spousal support payments, money held, controlled, or in process of distribution by any private retirement plan, including, but not limited to, union retirement plan, or any profit-sharing plan designed and used for retirement purposes, or the payment of benefits as an annuity, pension, retirement allowance, disability payment or death benefit from such retirement or profit-sharing plans, and all contributions and interest thereon returned to any member of any such retirement or profit-sharing plan, whether the same shall be in the actual possession of such pensioner or beneficiary, or deposited by him, are exempt from execution, attachment, or garnishment. Except with regard to moneys withheld from employees’ wages and contributions based on wages in employment under provisions of the Unemployment Insurance Code, the exemption given by this subdivision shall apply to any moneys held in self-employed retirement plans and individual retirement annuities or accounts provided for in the Internal Revenue Code of 1954 as amended by the federal "Employee Retirement Income Security Act of 1974” (P.L. 93-406, 29 U.S.C. 1001 et seq.) and by the "Tax Reform Act of 1976” (P.L. 94-455), provided that such moneys do not exceed the maximum amounts exempt from federal income taxation under these acts. [Emphasis added.]

. California Code of Civil Procedure § 690.18(d) was repealed effective July 1, 1983, and recodified as § 704.115, which now provides, in relevant part, as follows:
§ 704.115. Private retirement plans; exemption; periodic payments
(a) As used in this section, "private retirement plan" means:
(1) Private retirement plans, including, but not limited to, union retirement plans.
(2) Profit-sharing plans designed and used for retirement purposes. [Emphasis added.]
(3) Self-employed retirement plans and individual retirement annuities or accounts provided for in the Internal Revenue Code of 1954 as amended, to the extent the amounts held in the plans, annuities, or accounts do not exceed the maximum amounts exempt from federal income taxation under that code.
(b) All amounts held, controlled, or in process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, retirement allowance, disability payment, or death benefit from a private retirement plan are exempt.
(c) * * *
(d) After payment, the amounts described in subdivision (b) and all contributions and interest thereon returned to any member of a private retirement plan are exempt----

. See Footnote 6, for the exact language of C.C.P. § 690.18(d).

. See Footnote 6, for the exact language of the second sentence of C.C.P. § 690.18(d).

. Former 26 U.S.C. § 219(b)(2)(A)(i) provided: § 219. Retirement savings
(b) Limitations and restrictions.
(2) Covered by certain other plans. — No deduction is allowed under subsection (a) for an individual for the taxable year if for any part of such year—
(A) he was an active participant in— (i) a plan described in section 401(a) which includes a trust exempt from tax under section 501(a) ...

. See Footnote 6, for the exact language of the second sentence of C.C.P. § 690.18(d).

. 29 U.S.C. § 1056(d)(1) states that “[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated.”

. IRC § 401(a)(13) specifies that “[a] trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated."
*1359 "Alienated” as it is used in 26 U.S.C. 401(a)(13) includes an involuntary transfer to an executing creditor.
IRC Reg. 1.401(a) — (13)(b)(l) provides:
Under section 401(a)(13) a trust will not be qualified unless the plan of which the trust is a part provides that benefits under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy or other legal or equitable process.

. See Footnote 2 for the exact language.

. In re Threewitt, 24 B.R. 927 (D.Kan.1982); Warren v. G.M. Scott & Sons, 34 B.R. 543 (Bankr.S.D.Ohio 1983); In re Holt, 32 B.R. 767 (Bankr.E.D.Tenn.1983); In re Pruitt, 30 B.R. 330 (Bankr.D.Colo.1983); In re Rogers, 24 B.R. 181 (Bankr.D.Ariz. 1982).

. 11 U.S.C. § 541(c) provides:
§ 541. Property of the estate.
(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
(A) that restricts or conditions transfer of such interest by the debtor; or
(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor’s interest in property.
(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

. Both House and Senate reports expressly limit section 541(c)(2) to spendthrift trusts. The House Report, moreover, states that the Bankruptcy Code of 1978 “continues over the exclusion from property of the estate of the debtor’s *1360 interest in a spendthrift trust to the extent the trust is protected from creditors under applicable State law." [Footnote omitted] H.R.Rep. No. 595, 95th Cong., 2d Sess. 176, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6136; S.Rep. No. 989, 95th Cong., 2d Sess. 83, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5869.

. Property exempted includes:
Foreign Service Retirement and Disability payments, 22 U.S.C. § 1104;
Social security payments, 42 U.S.C. § 407; Injury or death compensation payments from war risk hazards,, 42 U.S.C. § 1717;
Wages of fishermen, seamen, and apprentices, 46 U.S.C. § 601;
Civil service retirement benefits, 5 U.S.C. §§ 729, 2265;
Longshoremen's and Harbor Workers’ Compensation Act death and disability benefits, 33 U.S.C. § 916;
Railroad Retirement Act annuities and pensions, 45 U.S.C. § 228(L);
Veterans benefits, 45 U.S.C. § 352(E);
Special pensions paid to winners of the Congressional Medal of Honor, 38 U.S.C. § 3101; and
Federal homestead lands on debts contracted before issuance of the patent, 43 U.S.C. § 175.
See S.Rep. No. 989, 95th Cong., 2d Sess. 75, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5861; H.R.Rep. No. 595, 95th Cong., 2d Sess. 360, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6316.

. The debtor cites this case as binding authority, ignoring the fact that the decision was reversed, vacated and amended by the Supreme Court on jurisdictional grounds, 463 Ü.S. 1 (1983), and thus has no precedential force.

. Tenneco, Inc. v. First Tidewater Bank of Virginia, 698 F.2d 688 (4th Cir.1983); General Motors Corp. v. Buha, 623 F.2d 455 (6th Cir.1980); Commercial Mortgage Insurance Inc. v. Citizens National Bank of Dallas, 526 F.Supp. 510 (N.D. Tex.1981).